**UNITED STATES of America,**
**Appellee,**

v.

**Armand VALDES, Appellant.**
**No. 184, Docket 23684.**

United States Court of Appeals
Second Circuit.

Argued Dec. 19, 1955.

Decided Jan. 13, 1956.

Writ of Certiorari Denied
March 26, 1956.

See 76 S.Ct. 546.

**146**

Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City (David Jaffe, Asst. U. S. Atty., New York City, of counsel), for appellee.

Archibald Palmer, New York City, Palmer, Masia & Palmer, New York City, for appellant.

Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Defendant appeals from a judgment, entered upon the verdict of a jury, by which he was found guilty of "receiving, selling or facilitating the transporta-tion" of a quantity of heroin. As a second offender he was sentenced to eight years imprisonment and a remitted fine of one dollar.

Shown by the records of the Federal Bureau of Narcotics "to have been in the narcotics traffic at least 10 years," the government agents proceeded to get the necessary evidence for another conviction through the instrumentality of a man named "Bill" who knew defendant "because he had purchased drugs from him."

The federal officers worked in cooperation with members of the Narcotics Squad of the New York police force. "Bill" made an appointment with the defendant whom he was to meet on the afternoon of April 9, 1952, in the neighborhood of 116th Street and Lexington Avenue, in New York City. Mabel Thomas, a New York policewoman, with three years experience in this type of work, was assigned to meet "Bill" and buy the narcotics from defendant. In her preliminary conversation with "Bill" she was told that they were going to meet the defendant, that "he was the person I was supposed to make the buy from," that "Bill" would introduce her as "the one he had told him about," and that, if the defendant pressed her for an explanation of why she wanted narcotics, she was to say that "it was because I was interested in selling it."

Miss Thomas testified that defendant "was a little while in arriving but when he did show up" the three of them got in a taxicab, where the following conversation ensued between Miss Thomas and defendant. "I asked to buy a quarter of an ounce of heroin * * * I told him I wanted something good * * * I asked him how much it would be and he said fifty * * * he said to give it to him there because I couldn't go any further * * * I gave him the money * * * he suggested that we wait for him on the corner of Park Avenue and 116th Street."

They got out of the taxicab, the defendant walked away hurriedly, and in about twenty minutes returned. The

three proceeded to Madison Avenue and 116th Street where they took another taxicab to 2040 Seventh Avenue, went upstairs, were ushered into an apartment by the use of a key the defendant had in his pocket. There defendant produced a quantity of white powder which he divided up with a knife, delivering to Miss Thomas in a glassine bag what proved to be 45.5 grains of heroin. With respect to the conversation as defendant left the first taxicab, the following colloquy between Miss Thomas and the Court is significant.

"The Court: Did Valdes say he was going to buy it? The Witness: He said he was going to get it."

In view of this explicit and circumstantially convincing account of what occurred it is difficult to understand the contention of counsel that defendant's motion for the direction of a verdict of acquittal should have been granted. The evidence far exceeds the minimum necessary to warrant the submission to the jury of the question of the guilt or innocence of defendant.

Much is made of the so-called issue of entrapment. But defendant testified at great length and, even taking into account the various contradictory versions of what he claimed occurred, the essence of his testimony from first to last was simply that he was wholly innocent of the charge made against him. He admitted, however, that in 1949 he had been convicted "for possession of drugs," for which he served a prison term, that there was another similar conviction in 1946, and that he was an addict. There were additional convictions for possession of a pistol and for unlawfully transporting a woman for immoral purposes. His familiarity with the traffic in narcotics is all too apparent throughout his testimony.

And yet, despite all this, we are solemnly assured that this is a case where, in the language so often quoted from Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413, "the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."

Suffice it to say that the trial judge left the question of entrapment to the jury in a charge wholly free from error. If anything his elaboration of the subject was so extensive as to go far beyond anything justified by the record of defendant's demonstrated proclivities in the field of narcotics. Moreover, there was no occasion to read to the jury the variety of quotations from the opinions of appellate courts on the subject of entrapment, which were separately set forth in a number of requests to charge.

Although the identity of "Bill" was known to defendant's counsel some time before the trial, an application was made, after the testimony of Miss Thomas, for the issuance of a writ of habeas corpus ad testificandum to bring "Bill" at government expense from a federal penitentiary to testify on defendant's behalf. This application was supported by some proof of the indigence of defendant. But we can find no basis for holding that the denial of this writ constituted an abuse of judicial discretion. The application was unduly delayed, and the likelihood that the witness, if produced, would have in any substantial way aided the defense must have seemed remote.

In accord with the allegations of the indictment and the terms of the statute, 21 U.S.C.A. §§ 173, 174, the trial judge properly instructed the jury that if the evidence established to their satisfaction beyond a reasonable doubt that defendant concealed, sold or facilitated the transportation, concealment or sale of narcotics defendant was guilty, and that possession alone was "sufficient to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." But, even if only a sale had been charged, the evidence was amply sufficient to support a finding that there was a sale of 45.5 grains of heroin by defendant to Miss Thomas.

Appellant's reliance on the theory that defendant was merely a "procuring agent" is misplaced, as it was the testimony of Miss Thomas that she met defendant for the purpose of purchasing a quantity of heroin from him and that she did so. We have no occasion to take any position with reference to the holdings by our brethren of the Third and Fifth Circuits in United States v. Sawyer, 1954, 210 F.2d 169 and Adams v. United States, 1955, 220 F.2d 297, where the facts bear little resemblance to those before us here.

Affirmed.