### Kit Holmes v. The State.

No. 2330. Decided April 23, 1913.

**1.—Burglary—Accomplice—Rule Stated.**

The test in general as to whether a witness is an accomplice is: could he himself have been indicted for the offense either as principal, accomplice or accessory, if not, he is not an accomplice. Distinguishing Dever v. State, 37 Texas Crim. Rep., 396.

**2.—Same—Case Stated—Not an Accomplice—Witness.**

Where the State's witness by his whole acts and conduct showed that he had no criminal intent, but when approached by defendant promptly reported

the matter to his employer, and did not leave the door of the alleged bur-
glarized house open as requested by the defendant, and did not do any other
act in aid of the commission of the offense, he was not an accomplice. How-
ever, as the court submitted the question of fact as to whether he was an
accomplice to the jury, there was no error.

### 3.—Same—Accomplice—Charge of Court.

Where, upon trial of burglary, the owners of the alleged burglarized house
were informed by their agent that the defendant had told the latter to leave
the door of said owner's warehouse open the next time a new load of hay was
received, etc., and said owners informed said agent to carry out this scheme
with the defendant, and then reported the matter to the officers, when the de-
fendant was in the act of burglarizing the house, the said owners were not
accomplices and the court's failure to charge thereon was no error.

### 4.—Same—Evidence—Rebuttal.

Where defendant sought to use the circumstance that the main State's
witness was let off a few days by his employer and went elsewhere, to raise
the issue that the said witness was an accomplice, there was no error in per-
mitting said witness to explain why he was let off from work.

### 5.—Same—Indictment—Names of Witnesses.

Where defendant filed no motion asking that he be furnished the names
of the witnesses on the indictment which did not appear on the certified copy
thereof, but waited until the case was called for trial when he moved to post-
pone the case because of this omission, there was no error in overruling the
motion. Following Walker v. State, 19 Texas Crim. App., 176, and other cases.

### 6.—Same—Special State's Counsel—Jury and Jury Law.

Where defendant objected to selecting a jury until he had been furnished
with the names of all persons contributing to the fund under which special
counsel for the State was employed, which the court declined to do, but in-
formed him that he could ask each member of the jury if he had so contrib-
uted, there was no error; besides, there was no showing that any such persons
served on the jury or that injury resulted to defendant.

### 7.—Same—Jury and Jury Law—Challenge for Cause.

Where defendant's challenge for cause as to a certain juryman presented
no error under section 13, article 692, Code Criminal Procedure, there was
no error; besides, the record did not show that any objectionable juror served
on the jury.

### 8.—Same—Ownership—Incorporated Company—Want of Consent.

Where the indictment alleged the name of the manager of a certain coal
company as the owner of the alleged burglarized house, and the evidence showed
that other employes of the company had a key to said house, this would not
raise the issue that they were the owners of the property, although they were
permitted to testify to want of consent.

### 9.—Same—Contradicting Witness.

Where, defendant on cross-examination of the State's witnesses brought out
the fact that they were drinking intoxicating liquor at the time they observed
defendant's acts to show that they were not in condition to correctly detail the
facts, there was no error in permitting the State to show that these witnesses
were not intoxicated.

### 10.—Same—Jury and Jury Law—Officer of the Court.

Where, upon trial of burglary, a deputy sheriff who was a witness for the
State was placed in charge of the jury, there was no error in the absence of any
improper conduct on the part of the officer.

**11.—Same—Evidence—Witness—Immunity—Rebuttal.**

Where, upon trial of burglary, the defendant, on cross-examination of one of the State's witnesses, showed· that he had been promised immunity from punishment not only in the case at bar, but in others, in order to attack his credibility, there was no error in permitting the State to show that the witness had made the same statement prior to his testifying in the case. Following Anderson v. State, 34 Texas Crim. Rep., 546.

**12.—Same—Evidence—Accomplice—Corroboration.**

Upon trial of burglary, there was no error in permitting the State's witness who was an accomplice to testify to the acts and conduct of the defendant on the night of the burglary, and to corroborate his statements by other State's witnesses.

**13.—Same—Principals—Charge of Court.**

Where the court's charge on principals followed approved precedent, there was no error.

**14.—Same—Accomplice—Charge of Court.**

Where the court instructed the jury that one accomplice cannot corroborate another, the contention of appellant that he did not do so is fully met.

**15.—Same—Consent—Charge of Court.**

Where, upon trial of burglary, the court's charge on consent as to persons who were not in position to give the same was more favorable to defendant than the law required, there was no error.

**16.—Same—Charge of Court—Entry.**

Where, upon trial of burglary the court correctly defined entry in his main charge, there was no error in refusing a special charge thereon.

**17.—Same—Requested Charges—Practice in District Court.**

It is hardly proper practice to wait until the court has read his charge, and then just as the jury is retiring, to present the court with a number of special charges. However, where the special charges refused were not the law or were covered by the main charge, there was no error.

**18.—Same—Argument of Counsel—Bill of Exceptions.**

In the absence of a bill of exceptions to the argument of counsel, the matter cannot be reviewed on appeal.

**19.—Same—Newly Discovered Evidence.**

Where the alleged newly discovered evidence was of an impeaching character and would not have probably produced a different result, there was no error in overruling a motion for new trial on that ground.

**20.—Same—Sufficiency of the Evidence.**

Where, upon trial of burglary, the evidence sustained the conviction, there was no error on that ground.

Appeal from the District Court of Wood. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of burglary; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*W. N. Jones & M. D. Carlock,* for appellant.—On the court's charge

on the question of ownership; Staha v. State, 151 S. W. Rep., 543; Branch Crim. Law, 785.

*C. E. Lane*, Assistant Attorney-General, and *J. H. Beavers*, for the State.—On the question of names of witnesses on the indictment: Hart v. State, 15 Texas Crim. App., 202, and cases cited in opinion.

On question of special prosecutor: Branch Crim. Law, 330.

On the question of challenge of juror: Bejarano v. State, 6 Texas Crim. App., 265; White v. State, 30 id., 652.

On question of ownership: King v. State, 100 S. W. Rep., 387; Miles v. State, 51 Texas Crim. Rep., 587, 103 S. W. Rep., 854; Shelton v. State, 108 S. W. Rep., 679; Price v. State, 55 Texas Crim. Rep., 157, 115 S. W. Rep., 586.

HARPER, JUDGE.—Appellant was indicted charged with burglary. When tried he was convicted and his punishment assessed at three years confinement in the penitentiary.

In this record there are some thirty-five bills of exception, and while we may not treat of each of them at length, yet we have read them, and acted on such as we thought necessary to a proper disposition of the case.

It appears that appellant was running a livery stable in the town of Alba. The Consumers Lignite Company was operating a mine near that town, and had a commissary, warehouse, etc. In the warehouse they kept feed for their teams, buying it in carload lots. According to the State's evidence appellant approached Jeems Russell, a negro, employed by the coal company, to do its feeding, and asked him in regard to where the company kept its supply of feed, and learning, he requested the negro when a fresh carload was received to let him know, and requested him to leave the door open. This the negro agreed to do, and went at once and reported the conversation to the manager of the coal company, Mr. Hodges, and an employe, Mr. Shoemaker. Messrs. Hodges and Shoemaker told the negro to report to appellant when the car was received and let them know what he said. Jeems Russell did as they instructed him, and when the car of feed was received and he was approached by appellant he informed him that the carload of feed had been received, when appellant again instructed him to leave the door unlocked, that he would come down that night. The negro reported this conversation to his employers, who then reported the matter to the officers. Appellant insists that this state of facts makes Messrs. Hodges and Shoemaker, and the negro, Jeems Russell, all accomplices to the crime, if a crime was committed, and asked a number of charges presenting this theory of the case, all of which the court refused. Mr. Wharton in his work on Criminal Evidence, section 440, says: "An accomplice is a person who knowingly, voluntarily and with common intent with the principal offender, unites in the commission of a crime. The co-operation must be real—not apparent. The co-operation must be active. Mere knowledge that a crime is to be committed is not gen-

erally sufficient to make the party an accomplice. . . . But there are certain relations recognized by law in which the voluntary co-operation of a person with the accused does not render such person an accomplice. Thus those who co-operate with a view to aid justice by detecting a crime; nor a detective who joins a criminal organization for the purpose of exposing it, even though, to aid such exposure, he unites in and apparently approves its counsels; nor a disguised emissary who by purporting to be a friend of the parties suspected, seeks to draw from them the inculpatory information." In Cyc. (vol. 12, page 1191), it is said to render one guilty as an accomplice, he must have participated in or instigated the crime; he must have had the requisite criminal intent. In American and English Ency. of Law, vol. 1, page 390, the rule is said to be: "The test in general to determine whether a witness is an accomplice is the inquiry: Could the witness himself have been indicted for the offense either as a principal, accomplice or as accessory? If he could not be so indicted, he is not an accomplice. . . . Criminal intent is a necessary ingredient of crime, and is essential to render one an accomplice. It follows that where this element is absent one is not an accomplice, and as an illustration states that a person feigning to be a confederate in order to discover and bring a criminal to justice is not an accomplice in crime with them." In all these works many authorities are cited, including a number of opinions rendered by this court. Recently this court said, in the case of Bush v. State, 151 S. W. Rep., 554: "There is a line of cases which holds that a violation of the law is in contemplation, and take steps to detect that crime, or get evidence by which the guilty parties may be punished, he would not be an accomplice, but in such cases he is not an original party to the bringing about the crime and is not guilty of originating or initiating it. In that character of case his connection with it is after the inception of the crime and after it has been determined upon, and he only then gets into it as a detective or for the purpose of arresting the party and bringing him to punishment." This has always been the rule in this court.

It has been contended that the opinion of this court in the case of Dever v. State, 37 Texas Crim. Rep., 396, announces a somewhat different rule, but a reading of that case will convince one otherwise. In that case the person held to be an accomplice, it is true, reported the matter to the officers, and kept them advised, and had no intention of personally engaging in the robbery, but it was further shown that when he reported the matter to the officers, that he and they conferred and decided on the plans, etc., which was reported to the Devers not solely for the purpose of detecting a criminal, but also for the purpose of obtaining a reward offered by the railroad for the detection of train robbers, which reward they agreed to divide equally among themselves. And the testimony in the case would lead one to conclude that the witness induced the Devers to agree to the commission of the offense in

order to obtain the reward and not for the purpose of detecting a crime already fully decided on by the Devers.

In this case no one sought to induce appellant to commit the burglary. The design was formed by him alone, and he approached the negro, Jeems Russell, to get him to inform him as to amount of feed on hand, and when a large lot would be received, and to induce the negro to leave the door open that the theft might the more easily be accomplished. The negro did not originate the design; did no act in furtherance of the commission of the offense; did not leave the door open as requested and was not requested to, nor did he do any other act in aid of its commission. The negro by his whole acts and conduct shows he had no criminal intent; no idea of participating in the crime even remotely, but when approached by appellant promptly reported the matter to his employer—the person whose commissary appellant by his remarks shows he contemplated visiting for the purpose of stealing therefrom. The negro reported the matter to his employer so that if appellant did so he might be detected. Those in control of the commissary told the negro, if approached again by appellant, to let him know when the feed arrived, and report to them what he said. This the negro did, and the detection of appellant was accomplished by this means. However, the court submitted to the jury the determination of the question of whether or not the negro, Jeems Russell, was an accomplice in an appropriate charge, and certainly this is all that should have been done. The evidence certainly does not, as a matter of law, make him an accomplice, but on the contrary seems to prove beyond a reasonable doubt that he was not an accomplice to the crime.

As to the witnesses Hodges and Shoemaker, there is no testimony suggesting that they were accomplices, and the court did not err in refusing to submit that issue to the jury. As to the witness, Jeems Russell, appellant, on the trial, sought assiduously to adduce testimony raising the issue that he might be an accomplice, and asked the negro if he had not been discharged by the Hodges on account of connection with this attempted theft. The negro answered no, when appellant proved that he did not work for several days thereafter, when the court permitted the witness to state that the reason why he did no work was because Mr. Hodges had let him off for a few days for fear that when appellant learned of his, the negro's conduct, there might be trouble, and allowed him full pay for all the time. As appellant was seeking to use the circumstance that he was let off a few days and went elsewhere, to raise the issue that the negro was an accomplice, the court did not err in permitting the witness to explain the matter.

When the indictment was returned the appellant was served with a certified copy of it, except the copy served on him did not contain the names of the witnesses. He filed no motion asking that he be furnished the names, but waited until the case was called for trial, then moved to postpone the case because of this omission. This question has been decided adversely to appellant's contention in a number of cases.

Walker v. State, 19 Texas Crim. App., 176; Jacobs v. State, 35 Texas Crim. Rep., 410.

It appears that Mr. Beavers had been employed to assist in the prosecution, and appellant filed a motion to require him to disclose who had employed him. Mr. Beavers, at the request of the court, stated the names of the men who employed him, but also stated that he understood that funds had been raised by subscription, a number of citizens living in the community where the crime had been committed, whose names he did not know contributing to the fund. Appellant objected to selecting a jury until he had been furnished with the names of all persons contributing to the fund. This the court declined to accede to, but informed appellant he could ask each member of the jury if they had contributed any sum to the prosecution. In this the court did not err. Appellant does not attempt to show that any person contributing served on the jury, nor that he suffered any injury by the ruling of the court.

Appellant's complaint that the court erred in not sustaining his challenge for cause as to the juryman McCollum presents no error. The bill shows that he was a competent juryman, under section 13 of article 692. In addition to this the bill shows that the juryman did not serve in the trial of the case, and does not show that any objectionable juror was forced on him.

The indictment alleged that the house burglarized was the property of Mr. Hodges. All the testimony shows that he was the general manager of the coal company and had control of all its property, and the fact that the negro who fed the stock carried a key, and another employe also carried a key, would not raise the issue that they were the owners of the property, and the court did not err in admitting testimony that Hodges was general manager, and in refusing the instructions requested on this issue. Neither was there any error in permitting the State to prove by those two who had keys, as well as by the general manager, that appellant did not have their consent to enter the house.

Appellant, to break the force of the testimony of the witnesses for the State, proved that on the night of the burglary they had intoxicating liquor, and drank some of it, when the State was permitted to ask if any of them became intoxicated. In this there was no error. Appellant's object and purpose evidently was to show that they were not in a condition to correctly see and know the occurrence as they had detailed it, and if that was his object, after he had injected the issue, it was permissible for the State to prove that they did not become intoxicated.

It appears that one of the deputy sheriffs was a witness in the case, and appellant objected to him guarding the jury. If every officer who should be summoned as a witness in a case should thereby be disqualified from performing his official duty, it might occur there would be no officer to wait on the court. In this case it is not attempted to show any improper conduct on the part of the officer. The court in approv-

ing the bill shows that no other deputy was in attendance on court, and the bill presents no error.

Jake Fowler is an admitted accomplice, and the court so instructed the jury. In the cross-examination of the witness the defendant proved by him that he had been promised immunity from punishment not only in this case, but in other cases pending against him. This was done to affect his credit as a witness, and cause the jury to give less weight to his testimony. Under such circumstances there was no error in permitting the witness to state he had made the same statement to the county attorney the day after the alleged burglary before he had been promised immunity from punishment. (Wharton's Crim. Law, sec. 492.) In Anderson v. State, 34 Texas Crim. Rep., 546, in rendering the opinion, Judge Hurt says: "An accomplice can be sustained by such proof just as any other witness." The other exceptions to this witness' testimony are, to say the least, hypercritical. This witness, while testifying as to the acts and conduct of the defendant on the night of the burglary, told the road they traveled, the kind of vehicle they were driving, the kind of horses, etc., and told of appellant offering him a pistol. The officers who arrested the appellant that night corroborated this witness as to the road appellant was traveling when arrested, the kind of vehicle, and color of horses, also stated that when arrested appellant had on a pistol. Appellant objected to the officer being permitted to testify that he had on a pistol. This was admissible along with other circumstances as corroborative of the testimony of the accomplice.

The court's charge on who are principals in the commission of an offense is in language frequently approved by this court, and correctly applied the law to the evidence, and is not subject to the criticism that it is "a charge on conspiracy to commit burglary." Branch's Crim. Law, sec. 682.

The complaint that the court should have charged the jury that one accomplice can not corroborate another is met by the charge of the court when he instructed the jury: "You are charged that an accomplice can not be corroborated by declarations made by him nor by testimony of another accomplice; so if you find that Russell was an accomplice, or if you have a reasonable doubt as to whether he was, then you are charged that Fowler's testimony can not be corroborated by Russell's testimony, and Russell's testimony can not be corroborated by Fowler's testimony."

In his charge the court instructed the jury that, if appellant had the permission of James Russell to take the oats, and he believed Russell had authority to give such permission, or the jury had a reasonable doubt about these matters, to acquit. This was more favorable to defendant, if anything, than he was entitled to, for the evidence hardly raises the issue that he thought Russell had any such authority. The fact that Russell was employed to feed the stock, and carried the key, would not indicate to anyone that he had authority to give another

permission to go to the commissary in the dead hour of night and carry away oats. The court correctly defined entry in his main charge, and it was not necessary to give the special charges asked in regard to this matter.

Special charges Nos. 3, 5, 6, 7, 8, 9, 10, 11, 12, 15 are not the law of this case, and should not have been given, and all the other special charges requested were fully covered by the court's main charge. The practice of waiting until the court has read his charge to the jury, and then just as the jury is retiring, to present to the court a handful of special charges is not to be commended. Of course, if there is an error in the charge as given, it can be taken advantage of in the motion for new trial, but to in this way seek to have added emphasis given to a special charge, by having a jury called back to hear it read, is hardly proper.

There is no bill of exceptions showing that the prosecuting officer used the remarks alleged in special charge No. 16, consequently the question is not presented in a way that we can review the matter. However, as qualified by the court, "Refused because in answer to argument of defendant's counsel," if the matter had been verified by a bill of exceptions, it would not present error.

That ground in the motion alleging newly discovered testimony presents no error. The testimony of the witnesses named as alleged would only be admissible as tending to impeach the witness Fowler, and would not be of that force as would probably produce a different result.

The evidence in this case amply supports the verdict. An opening of the door and entry was shown beyond any reasonable doubt. The intent in opening the door is made manifest by the entire record, and even if it should be said that Russell was an accomplice, as well as Fowler, the finding of the "canceled checks" signed by appellant, and returned to him, as testified to by the banker, near the door of the house which was broken into, would in and of itself be a sufficient corroboration of the witness Fowler that appellant was the person who opened the door and participated in the crime. However, there are many other facts and circumstances in evidence which corroborate the witness, and show that appellant is guilty of the offense.

The judgment is affirmed.

*Affirmed.*