JESUS AGUERO V. STATE

No. 28,814. February 20, 1957.

266

Hall and Hall by H. C. Hall, III, Laredo, for appellant.

Richard Dobie, District Attorney, Cotulla, and Leon Douglas, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is the possession of heroin; the punishment, 16 years.

Supervising Agent Bob Richards of the Narcotics Division of the Department of Public Safety testified that on the occasion in question he was in Laredo upon instructions from his superior officer and that his purpose was to detect smugglers of narcotics into Texas. He stated that he made contact with a known narcotic user who was a "special employee" of his department, and the two of them went to Nuevo Laredo in Mexico, where they there sought out one Juan Alvarez. After laying the groundwork, Richards agreed to buy, and Alvarez agreed to sell, 20 grams of heroin to be delivered north of the city of Encinal in Texas, Richards paying $10 per gram plus $60 for the delivery. Following the conclusion of their trade, Alvarez took Richards to a house in Nuevo Laredo, had a private conference with a man who resembled the appellant, informed Richards that this man would make the delivery the following morning, and Richards noted the license number of a truck parked near the house. The following morning, Alvarez informed Richards that his purchase was already across the border and instructed

him how to proceed to the contact point north of Encinal. Richards and the special employee proceeded to that point and found the truck bearing the license number, which he had noted the night before, parked on the highway. As soon as Richards brought his automobile to a halt, the appellant approached him and handed him a prophylaxis containing red cellophane and fastened with a rubber band. The appellant was not arrested at the time of delivery.

The prophylaxis was shown to contain ten grams of heroin in separate paper wrappings.

The appellant did not testify in his own behalf and offered two kinsmen who testified as to his reputation.

In forceful argument and able brief, the appellant prays for a reversal of this conviction on many grounds. The evidence will be more fully developed in discussing them.

Appellant contends that Richards is an accomplice witness either in law or in fact and, since his testimony is not corroborated on the material issues in the case, the conviction cannot stand.

The most intriguing part of his argument lies in his contention that Richards entered into a conspiracy with Alvarez to illegally import narcotics into the United States, which would make him answerable under the laws of the United States, Mexico and Texas for the particular offense herein charged against the appellant. In order to properly answer this contention, it is necessary to analyze the testimony of Albert Richards, the agent in charge of the Laredo division of the United States Customs. He testified that, prior to Bob Richards' trip to Mexico, he was informed of the proposed plan to catch someone who had been smuggling narcotics into this country and that he informed the agents of the Texas Department of Public Safety that he could not knowingly permit narcotics to enter this country but that if any did get across as the result of their plan the information as to how they were brought across would be of benefit to his service. He stated that shortly after Bob Richards received the narcotics north of Encinal a full report was made to him and that he, in company with Bob Richards and the Assistant United States District Attorney, made a trip to Cotulla to confer with the Texas prosecutors who prosecuted this case.

There can be no question that Bob Richards would have

become a party to the crime if he had done what he did in order to secure the narcotics for his own use. Just how far officers may legally go in their efforts to ferret out those in the business of crime has been a source of considerable concern to this and every other court in the land, but certain general rules based upon sound reason seem to have been evolved. An officer does not become a party to a crime if he participates therein solely for the purpose of apprehending one engaged in crime and bringing him to justice.

This seems to have been the law since the relatively early case of Grimm v. U. S., 15 S. Ct. 470, 156 U. S. 604, 39 L. ed. 550, wherein Commonwealth v. Baker, 155 Mass. 287, was cited with approval. See also 22 C.J.S., Sec. 788, p. 1340. See also Holmes v. State, 70 Texas Cr. Rep. 214, 156 S.W. 1172; Minter v. State, 70 Texas Cr. Rep. 634, 159 S.W. 286; and Hyroop v. State, 79 Texas Cr. Rep. 150, 179 S.W. 878.

We are not impressed with appellant's contention that the court erred in admitting the heroin in evidence because the chemist was unable to testify whether it was heroin or heroin salts. The chemist, whose qualifications as an expert were admitted, testified that he submitted the substance introduced in evidence to four established tests, all of which showed conclusively that the substance contained diacetyl morphine, which is more commonly called heroin. The search for certainty need not lead to the hypercritical.

The most serious question presented by the case relates to the proof concerning the prevalence of the narcotic traffic in the Laredo area. Reliance is had upon the recent holding of this court in Carmean v. State, 163 Texas Cr. Rep. 218, 290 S.W. 2d 240, wherein we held error the proof of other crimes where the accused was not shown to have any connection therewith.

The interrogation which opened up this line of testimony was as follows:

"Q. Just generally speaking, without reference to this defendant or any other particular person, what was the condition in and around Laredo, Texas, and Nueva Laredo, Mexico, with reference to narcotics and transportation of narcotics or the smuggling of narcotics?"

Appellant's objection thereto was overruled, and the witness Richards answered as follows:

A. It has been a problem for our division for as long as I have been with the department. The presence of narcotics along, all up and down the border, not particularly Laredo, but all over the border coming in from Mexico. We have spent considerable man hours and time up and down the border due to that fact."

When the appellant cross-examined Richards, he asked the following questions and secured the following answers:

"Q. Because there was widespread smuggling and selling of narcotics on the border? A. Yes, sir."

"Q. Well, didn't you tell us that this smuggling on the border was very, very widespread? A. Yes, sir, it is."

"Q. Don't you know that about seventeen miles south of Cotulla, from past that overpass, is where they have caught more heroin and dope peddlers and wetbacks and things like that than any place in the state? A. No, sir, I don't know."

On direct examination of the witness Albert Richards, he was permitted to testify without objection as follows:

"A. *The Laredo office of the Customs Agency Service has probably accounted for ninety per cent of all the arrests made by the Customs Agency Service in the United States.*"

On cross-examination, he was interrogated by appellant's counsel as follows:

"Q. Mr. Richards, how long have you been head of the office there in Laredo? A. It was four years in August.

"Q. How many times during that time has any man in your department gone across the river and bought and paid for any narcotics? A. I would say ten or twelve times, Mr. Hall.

"Q. Out of how many cases that you all have made? A. I believe we average about 150 or 175 cases a year.

"Q. That is about 800 cases? A. Yes, sir."

and answered further without objection:

"A. Information discloses, and we consider it very reliable

information, that ninety per cent of the heroin and marijuana that is used in the United States comes through or to Texas * * * *"

It is not necessary for this court to decide whether the trial court erred in overruling the first objection which was interposed because we find that practically the same evidence was introduced without objection and as the result of questioning by the appellant's counsel.

Appellant next contends that the court erred in failing to give his requested charge defining "possession" and charge on the law of circumstantial evidence. Both contentions are predicated upon the assumption that there was no direct evidence that the appellant knew the contents of the prophylaxis which he delivered to Richards. We have concluded that this is a case where the facts are in such juxtaposition one to another that only one logical conclusion may be drawn therefrom and that the court did not err in refusing to give the requested charges. Landry v. State, 156 Texas Cr. Rep. 350, 242 S.W. 2d 381.

In Brock v. State, 162 Texas Cr. Rep. 339, 284 S.W. 2d 746, relied upon by the appellant, the narcotics were found in a washroom on the accused's premises which were open to the public. The accused in that case was never shown to have the narcotics in his actual physical possession. In the case at bar, the appellant pulled the prophylaxis out of his pocket and delivered it to Richards on the side of an open highway and, without so much as saying a word, got in his truck, turned around, and headed for Laredo.

The next question raised is the admissibility of the conversations between Richards, Alvarez, and the special employee in Nuevo Laredo and in the absence of the appellant. What we have heretofore said disposes of the appellant's contention that Richards was a co-conspirator. That a conspiracy existed between Alvarez and the appellant to engage in the narcotic traffic before the night in question is apparent from the facts before us. Alvarez collected for the heroin, agreed to deliver it in Texas and collected $60 for such service before the parties ever went to the house where the truck which made the delivery was to be found. As they approached the house, Alvarez told Richards, "This is the man that is going to make the delivery. He will be in that truck."

The acts and declarations of one co-conspirator are admis-

sible against other conspirators during the furtherance of the conspiracy.

The next question briefed is the refusal of the trial court to charge the jury on the defense of entrapment. What we have said in discussing the last question precludes the question of entrapment. If the appellant was in the business of delivering narcotics across the border, then certainly he was not entrapped in this case. Be that as it may, we are at a loss to see how the appellant could be entrapped by Richards since they had no personal contact until the moment of delivery. Richards' testimony clearly did not raise the defense of entrapment, and the appellant offered no testimony on the question. Under such a state of facts, the defense of entrapment has not been raised. Cooper v. State, 162 Texas Cr. Rep. 624, 288 S.W. 2d 762.

We are not impressed with the appellant's contention that he is not guilty of "possession" of the heroin because if he is guilty of anything it is "dispensing" the same.

We again commend counsel for their studious brief and persuasive argument.

Finding no reversible error, the judgment of the trial court is affirmed.