## Roy Masters v. State

No. 32,631. December 7, 1960

Motion for Rehearing Overruled January 25, 1961

*King C. Haynie* (On Appeal only) Houston, for appellant.

*Dan Walton,* District Attorney, *Samuel H. Robertson, Jr., Howell E. Stone,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney Austin, for the state.

MORRISON, Presiding Judge

The offense is the unlawful practice of medicine; the punishment, 30 days in jail and a fine of $500.00.

This is a case of first impression. It was stipulated that appellant had not registered any certificate authorizing him to practice medicine.

Investigator Libby, who was employed by the Better Business Bureau of Houston, testified that he was instructed to investigate appellant's activities after advertisements appeared in the local paper which read:

472

"DO YOU FEEL AFRAID? ? and don't know why? Do you feel insecure? Do you feel inferior around people and can not make decisions? Do you have tension? Nervousness? Do you have a compulsive habit like drinking or smoking or over eating? Do you think the worst and not the best? Do you dread new situations? Do you have to push yourself to do your work? Have you tried everything? You haven't tried HYPNOSIS. Over 600 have recovered from these problems PERMANENTLY! Call now for a private interview without cost or obligation. FREE LECTURE Roy Masters Director of the Institute of Hypnosis will demonstrate his recently discovered technique—7:30 P.M. every Thursday evening at 3217 Montrose (At Westheimer) JA 2-8950 YOU ARE INVITED—WITHOUT OBLIGATION!"

"HYPNOTIZED THROUGH INTERPRETER—Esther Alvarez, a Spanish orphan who for 16 years lived in the unbearable misery of blackouts, vomiting and morbid fears, her skin was too painful to touch and she could not hold a job. There was no more hope or future for Esther. That was nine months ago. Mrs. Marie Mendoza suggested hypnosis and translated for Mr. Roy Masters. Today Esther is well and working. Hypnosis has given her a chance to live—along with over 300 others this year. For Esther, it took seven visits (this is average). Successful cases are permanent without further need for hypnosis. Benefits obtained through hypnosis are freedom from fears, tensions, insecure feelings, inferiority, overweight, smoking, drinking, poor memory and extreme nervousness. For further information attend the free educational lecture every Thursday, 7:30 p.m. presented by Roy Masters, consulting hypnotist and director, INSTITUTE OF HYPONSIS, 3217 Montrose, JA 2-8950."

The first ad carried a picture of appellant, and the second a picture of appellant touching the hand of a young Latin-American woman. Libby stated that he attended one of the free lectures at an office bearing a sign "Institute of Hypnosis;" that there were approximately 20 persons present and appellant spoke to them about several cases in which he recounted substantially the assertions set forth in the second ad, and also told of a middle-aged man who had visited a number of doctors and spent a lot of money trying to get relief from a skin ailment and said that after several "sessions" with him (the appellant) the man's skin condition was corrected. He stated that appellant told of a young boy who had come to him after having been confined for mental treatment, that under hypnosis he discovered that the boy hated his mother and after treating the boy under hypnosis the boy was "relieved of this condition." He stated that appellant

said he used hypnosis to cure ulcers, alcoholics and narcotic addicts. Libby testified that several days later he returned to appellant's office and in a private interview, and in answer to inquiries from appellant, told him that he had blinding headaches, nausea, pressure behind the eyeballs, extreme weakness, and dizziness. According to the witness, appellant questioned him closely about his health problems and his marital status; he told appellant he had been under the treatment of medical doctors but they had given him no relief, and appellant said that by the use of hypnotherapy he could cause those headaches to diminish and eventually alleviate the condition and that he would require an advance payment of $100.00 prior to beginning treatment. Libby testified that he told appellant he did not have that much money and that he returned a few days later, at which time appellant did accept a $50.00 check, marked "Treatments," which was endorsed and paid by the bank and introduced in evidence. He said that appellant carried him in his back office, placed him in a chair, again questioned him about his family history and his medical background, and then told him to relax and suggested that his eyes were heavy, his eyeballs were being drawn upward, that his sleepiness would go deeper into a trance. Libby pretended that such was happening to him, all the time retaining full consciousness of what was going on about him. He stated that he complied with appellant's suggestion that he raise his right hand and touch his forehead, and then appellant began to tell him that his difficulty grew out of his hate for his father and that he should banish that hate from his mind and think only kindly of others, and that when he brought him out of the trance that Libby would have only blessed thoughts and "think nothing but love and kindness toward the entire world," that appellant admonished him to place his hand to his forehead each morning and evening and remember to forgive and forget and this would remedy his headaches. He stated that appellant then counted to four or five and told Libby that he was awake and instructed him to make an appointment for a future date.

Ted Hansen, chief investigator of the Better Business Bureau, testified that he knew appellant, had been consistently "exposed to him" since 1955, and that he had employed Libby to make investigations and had later instructed Libby to investigate appellant.

Dr. Charles Klanke, a medical doctor of 25 years' experience, testified that he employed hypnosis as a means of curing certain physical and mental disorders and had been doing so for the last 15 years. He stated that in order to prepare himself for the use of

hypnosis he had, in addition to his medical education, studied at Cornell, at London University, at U.C.L.A., and had attended seminars in Chicago and San Francisco. He testified that he never used hypnosis until he had made a complete physical examination of the patient and that he considered such an absolute necessity and that it was not safe for anyone to use hypnosis in an effort to cure unless such person had a background of medicine because by the improper use of hypnosis a patient might be made worse off than he had been before and might resort to suicide.

Appellant did not testify in his own behalf, but called Dr. James McCroy, a Ph.D. in chemical psychology, who testified that "there are people who use hypnosis who work with medical doctors" and that he knew psychologists who occasionally used hypnosis as a method of treatment.

Article 741, V.A.P.C., under which this prosecution was brought, reads, in part, as follows:

" 'Practicing medicine'

"Any person shall be regarded as practicing medicine within the meaning af this Chapter:

"1. * * *

"2. Who shall diagnose, treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation; provided, however, that the provisions of this Article shall be construed with and in view of Article 740, Penal Code of Texas and Article 4504, Revised Civil Statutes of Texas as contained in this Act. * * * ."

We deem it sufficient, without detailing their provisions, to state that appellant is not shown to be exempted under either of the articles quoted above. If the Legislature will see fit to include one in appellant's class within the exceptions contained in the two articles, they may do so, but they have not done so yet; and it becomes our duty to construe that statutes as they are given to us by the legislature. It is clear from the record in this case that appellant offered to treat a physical or mental disorder by a system or method and to effect a cure therefor, and that he charged

money for his services; and so we hold the evidence to be sufficient to support this conviction. See Journal of Criminal Law, Criminology, and Police Science. Vol. 46, No. 3, p. 333.

We will now discuss the question raised in appellant's brief.

He first contends that the court committed fundamental error in his charge in that the information contained the phrase "name of medical college from which he graduated, and date of graduation"; whereas in the charge the phrase appears as follows: "school of practice to which he professes to belong."

In the absence of an objection to the charge and because we are at a loss to see how the jury could have been misled or appellant injured by the charge, we hold this to be a harmless error.

He next contends that the witnesses Libby and Hansen were accomplices and the court should have so instructed the jury. In Alexander v. State, 168 Tex. Cr. Rep. 288, 325 S.W. 2d 139, we held that an undercover agent is not an accomplice witness so long as he does not bring about the crime, but merely obtains evidence to be used against those engaged in the traffic. The quotation from Mayo v. State, 156 Tex. Cr. R. 26, 238 S.W. 2d 777, upon which appellant relies, was clearly dicta as the case had already been decided upon the grounds that the state had failed to identify the man on trial as the man who had committed the act.

Appellant complains of the admission of certain testimony which he contends was hearsay. We have examined the testimony and find that it is in nowise incriminative and the court instructed the jury that the same was not admitted to show the truth of the statement but merely to show that the witness had heard such a statement made. It had no bearing on appellant's guilt, and its admission was not reversible error. 5 Tex. Juris. 2nd 696, sec. 444.

His last contention is that the evidence is insufficient to show that appellant received any money for his services. Libby testified that he wrote the check in the reception room and handed it to the appellant's secretary. The check was payable to Roy Masters, and it was endorsed "Roy Masters Institute of Hypnosis," and was paid by the bank and charged against Libby's account. Vestal v. State, 162 Tex. Cr. Rep. 223, 283 S.W. 2d 955, relied upon by appellant is not controlling here because it was a prosecution for passing a forged instrument and it was necessary

for the allegations and the proof to correspond. Such is not the question before us here. The check here was delivered to appellant's employee, was endorsed and was paid. This we hold to be sufficient evidence that appellant received money for his services.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.