**Dr. Stuart G. McKENZIE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36777.**

Court of Criminal Appeals of Texas.

April 22, 1964.

Rehearing Denied June 24, 1964.
Second Motion for Rehearing Denied
Oct. 14, 1964.

John J. C. O'Shea, Lubbock, Blanchard, Clifford, Gilkerson & Smith, Lubbock (on

appeal only) by George Gilkerson, Lubbock, for appellant.

Fred E. West, County Atty., Broadus A. Spivey and Wm. Quinn Brackett, Asst. County Attys., Lubbock, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is under Art. 726d, Vernon's Ann.P.C., for the unlawful delivery of a dangerous drug; the punishment, twenty-one months in jail and a fine of $3,000.

Appellant was a duly licensed and practicing doctor of osteopathy in the city of Lubbock. In November, 1962, the state's witness Kenneth Decker, who was an undercover agent for the narcotics division of the Department of Public Safety, went to Lubbock to investigate narcotics violations in the city. On November 15, Decker went to the appellant's office on 34th Street with another person who introduced him to appellant. At such time, both Decker and his companion purchased some pills (bennies) from appellant. On November 21, Decker returned to appellant's office. He testified that immediately upon his arrival in the office appellant appeared and asked that he come to the back. They proceeded to a back office and after appellant shut the door he said: " 'What do you want?' " and Decker replied: " 'Well, what do you have?,' " to which appellant replied: " 'I don't have any of those dexedrine spansules. * * * I'm getting pretty low. * * * I have got some obedrin. * * * How many do you want?' " Decker replied: " ' * * * about a hundred,' " and appellant then reached over on a table, got a bottle of tablets and a small box, poured the box full of tablets, and asked the witness his name. Decker gave him a fictitious name, which appellant wrote on the box and then delivered the box to Decker, who in turn gave appellant $5. Decker stated that in the conversation appellant said "he was having to be a little more careful * * * he was having to pull up some on his dealing because a little heat was on * * *," and that appellant did not discuss the witness's

physical condition or examine him at the time the tablets were delivered. He further identified as state's exhibit 1 the box of ninety-four tablets that appellant delivered to him, which bore the following label: "Stuart G. Mackenzie, D. O., 1703 34th St. —SH 4–2902, Lubbock, Texas. Directions: Fred Morgan, Sig. One B & D, S. G. Mackenzie, D. O., 11–21–62, K. D." The witness further testified that some two or three days after November 21, he returned to appellant's office but did not purchase anything from him when appellant stated "he wasn't doing any business * * * the heat was on and he was going to have to pull up * * * for awhile * * *."

Decker testified that it was his duty as an undercover agent to obtain evidence in the commission of crimes and that in his dealings with appellant there was no doctor-patient relation but only that of buyer and seller. He further stated that on the occasion in question he was accompanied by Agent Bob Richards and Deputy Sheriff Jack Bryant, who remained outside in an automobile with an electronic receiver and tape recorder which recorded, by radio signal, the conversation between him (Decker) and the appellant, through a portable minature transmitter concealed in the witness's pocket. At the trial, the tape recording was played to the jury and was introduced in evidence after being identified by Agent Richards as fairly representing the conversation which he had heard over the transmitter between appellant and Agent Decker on November 21.

It was shown that the box of ninety-four tablets delivered by appellant to Agent Decker was taken directly by him to Chemist Charles Beardsley, of the Texas Department of Public Safety, for examination. Chemist Beardsley identified the tablets as those sold under the trade name of "obedrin" for weight control and appetite appeasers. He stated that he made a spectrophotometric analysis of four of the tablets picked at random, which revealed that they contained amphetamine and barbituric acid derivative.

Testifying in his own behalf, appellant stated that on November 21, Decker came to his office and purported to be a man who traveled and was in need of something to keep him awake. Appellant stated that on such occasion and in the course of his practice he dispensed the tablets in good faith, as medication, to Decker, who held himself out as a patient.

Witnesses were also called by appellant who testified that his reputation for being a peaceable and law-abiding citizen was good.

The court in his charge defined the terms " 'dangerous drug,' " " 'delivery,' " " 'patient,' " and " 'practitioner,' " substantially as defined in Art. 726d, supra, and instructed the jury that under the statute "the delivery of any dangerous drug is unlawful unless delivered by a practitioner in the course of his practice and the immediate container in which such drug is delivered bears a label on which appears the directions for use of such drug, the name and address of such practitioner, and the name and address of the patient."

Appellant challenges the sufficiency of the evidence to support the conviction, upon three grounds:

It is first contended that because Agent Decker was acting as an agent and employee of the State of Texas in the transaction, no offense was committed, by virtue of Sec. 4 of Art. 726d, supra, which provides, in part, that:

"The provisions of paragraphs (a) and (d) of Section 3 shall not be applicable:

"(a) As to the delivery of dangerous drugs to persons included in any of the classes hereinafter named * * * for use in the usual course of their business or practice or in the performance of their official duties, as the case may be * * * (b) (5) Officers or employees of Federal, State, or local government * * *."

■ We are unable to agree that this provision of the statute was intended by the legislature to be applicable to the delivery of a dangerous drug to an undercover agent of the Department of Public Safety who, at the time, was engaged in the detection of narcotic law violations in this state. Such an agent is not within the class of persons to whom delivery of a dangerous drug is made lawful under this section of the statute.

■ It is next contended that the evidence is insufficient to support the conviction because the proof shows that the tablets were delivered by appellant in the course of his practice.

Reliance is had upon certain provisions of Sec. 3 of Art. 726d, supra, which reads:

"The following acts, the failure to act as hereinafter set forth, and the causing of any such act or failure are hereby declared unlawful, except as provided in Section 4:

"(a) The delivery of any dangerous drug unless: * * *

"(2) Such dangerous drug is delivered by a practitioner in the course of his practice and the immediate container in which such drug is delivered bears a label on which appears the directions for use of such drug, the name and address of such practitioner, the name and address of the patient, and, if such drug is prescribed for an animal, a statement showing the species of the animal."

It should first be pointed out that the label on the container delivered to Agent Decker did not show his address, as required by this section of the statute.

Whether appellant delivered the tablets to Agent Decker as a practitioner in the course of his practice was a disputed issue in the case. According to Agent Decker's testimony, there was no doctor-patient relationship between them but only the relationship of buyer and seller. Under ap-

pellant's testimony, the relationship was doctor and patient and he delivered the tablets in the course of his practice. The jury, by their verdict, resolved the issue against appellant.

■ Appellant, although relying upon Sec. 3(a) (2), which makes lawful the delivery of a dangerous drug by a practitioner in the course of his practice, insists that such section of the statute which does not define the phrase "in the course of his practice" is so indefinite as to render the statute void and wholly inoperative.

With this contention we do not agree. In the recent case of King v. State, 166 Tex. Cr.R. 230, 312 S.W.2d 501, we upheld, as valid, Art. 726c, V.A.P.C., containing similar provisions, now repealed, against a like attack.

Appellant lastly contends that the evidence is insufficient to show that the obedrin tablets were a dangerous drug within the meaning of that provision of Sec. 2(a) of the act which reads:

"Provided, however, that preparations which contain certain other drugs, not covered by the provisions of this Act, other than those dangerous drugs specified in Section 2(a) (2) through (11) inclusive, in sufficient proportion to confer upon the preparation qualities other than those possessed by the dangerous drugs alone are exempt from the provisions of this Act."

■ While Chemist Beardsley admitted he did not run a quantitative test to determine the quantity of dangerous drugs in each tablet, there was no evidence of the existence of any other drugs in the tablets. The quoted provision of Section 2(a) (2), supra, is therefore not here applicable. The chemist testified that the obedrin tablets contained amphetamine and a barbituric acid derivative, which is a dangerous drug under the provisions of Sec. 2(a) (1) and (2) of Art. 726d, supra. We find the evidence sufficient to support the conviction.

Appellant complains that the court erred in failing to submit his requested charge on entrapment as a defense in the case. Reliance is had upon the rule stated in Cooper v. State, 162 Tex.Cr.R. 624, 288 S.W.2d 762, and other cases by this court, that "if the criminal design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, this is entrapment, and in law may constitute a defense to such crime."

■ We have carefully reviewed the record and conclude that the issue of entrapment was not raised. In his testimony, appellant's claim was that he delivered the drug as a practitioner in the course of his practice. The testimony of Agent Decker did not raise the issue of entrapment. In refusing to submit such issue to the jury, the court did not err. Cooper v. State, supra; Aguero v. State, 164 Tex.Cr.R. 265, 298 S.W.2d 822; Viley v. State, 163 Tex. Cr.R. 348, 290 S.W.2d 674.

Appellant's remaining contention is that the court erred in permitting the evidence showing the prior delivery by him to Agent Decker and the other person, on November 15, of certain dangerous drugs, and in not limiting the jury's consideration of such evidence in his charge.

■ An examination of the record reflects that no objection was made by appellant to the admission of the evidence and no request was made of the court to limit the jury's consideration thereof. The contention is overruled.

The judgment is affirmed.

Opinion approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING

McDONALD, Judge.

■ Appellant's very able attorney in his motion for rehearing herein, still con-

tends that the trial court erred in failing to submit appellant's requested charge on entrapment.

We have again considered the cases cited by appellant in this regard and find no fault with the law found therein. However, we must still conclude that the evidence presented in the instant case did not warrant the charge requested.

Remaining convinced that our original opinion properly disposed of this cause, appellant's motion for rehearing is overruled.