THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* TRINIDAD VERDEJO MELÉNDEZ, Defendant and Appellant.

Nos. CR-62-14, CR-62-15. Decided April 26, 1963.

*A. Viera Martínez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

 1. The appellant, an Internal Revenue Officer of the Treasury Department, was accused of bribery. He denied the facts charged against him and also contended, as a defense, that he was led to commit them by an undercover agent of the Unit of Investigations of the Treasury Department.[1] In *People* v. *Pérez,* 72 P.R.R. 809 (1951), we decided that the defense of entrapment is positive and "when invoked [it] admits that the act with which the defendant is charged as a public offense was committed by him." See also: *State* v. *Good,* 165 N.E.2d 28 (Ohio 1960); *State* v. *O'Donnel,* 354 P.2d 1105 (Mont. 1960); *State* v. *McIntosh,* 333 S.W.2d 51 (Mo. 1960); *People* v. *Jones,* 17 Cal. Rptr. 252 (1961);

---

[1] See T.E. p. 109, 2d part.

*People* v. *Polsalski*, 5 Cal. Rptr. 762 (1960); *People* v. *Lollis*, 2 Cal. Rptr. 420 (1960); Annotation, *Availability of Defense of Entrapment Where Accused Denies Participating at all in Offense*, 61 A.L.R.2d 677 (1958). Having the accused denied the facts charged against him, the defense of entrapment does not lie. But, even if we consider that the defense does lie where the accused denies the facts, the present circumstances in the case at bar do not justify it. That the accused was led to accept the bribe from the undercover agent does not arise from the evidence of the acts of the undercover agent. *People* v. *Pérez, supra*. As we said in *People* v. *Seda*, 82 P.R.R. 695 (1961); 299 F.2d 576 (1st Cir. 1961), *cert. denied*, 370 U.S. 904 (1962) "It is only required that the officer's action does not create or lead to an entrapment although it might facilitate the commission of the offense." The accused clearly showed his inclination to the commission of the offense by promptly accepting money from persons he knew traded with clandestine rum. It cannot be maintained that the undercover agent was the one to create in the mind of the accused the idea of accepting the bribe. The seed was ready to sprout. The undercover agent did not have to exert himself to convince the accused to accept the money in order that the latter should tell him when the raids were going to take place, or give him the "green light" when he saw him with rum cargoes. The agent gave him money and the accused accepted it.

In *State* v. *Pacheco*, 369 P.2d 494 (Utah 1962), the defense of entrapment is concisely stated as follows:

"For a peace officer to procure a person to commit a crime, which he otherwise would not have committed, for the purpose of apprehending and prosecuting him is entrapment. This is so discordant to the true function of law enforcement which is the prevention, not the causation, of crime; and so repugnant to fundamental concepts of justice that the conviction of an accused under such circumstances will not be approved. When that issue is present, the question is whether the crime is the

product of defendant's own intention and desire, or is the product of some incitement or inducement by the peace officer. If the crime was in fact so instigated or induced by what the officer did that the latter's conduct was the generating cause which produced the crime, and without which it would not have been committed, the defendant should not be convicted. On the other hand, if the defendant's attitude of mind was such that he desired and intended to commit the crime, the mere fact that an officer or someone else afforded him the opportunity to commit it would not constitute entrapment . . . ; and this would not be less true even though an undercover man went along with the defendant in the criminal plan and aided or encouraged him in it."

See also: *Sherman* v. *United States*, 356 U.S. 369 (1958); *Sorells* v. *United States*, 287 U.S. 435 (1932); *Carson* v. *United States*, 310 F.2d 558 (9th Cir. 1962); *Hansford* v. *United States*, 303 F.2d 219 (D.C. Cir. 1962); *United States* v. *Becker*, 62 F.2d 1007 (2d Cir. 1933); *People* v. *Toler*, 185 N.E.2d 874 (Ill. 1962); *Riddle* v. *State*, 374 P.2d 634 (Okl. 1962); Note, *Entrapment*, 73 Harv. L. Rev. 1333 (1960); Mikell, *The Doctrine of Entrapment in the Federal Courts*, 90 U. Pa. L. Rev. 245 (1942); Donnelley, *Judicial Control of Informants*, 60 Yale L.J. 1091 (1951); *Commentaries*, 6 Buffalo L. Rev. 348 (1957); Williams, *Entrapment A Legal Limitation on Police Techniques*, 48 J. Crim. L., C. & P.S. 343 (1957); Annotation, *Entrapment to Commit Bribery or Offer to Bribe*, 69 A.L.R.2d 1397 (1960).

2. Originally, two complaints were filed against the accused. In one he was charged with having received a bribe from José M. Díaz Alamo, an undercover agent who acted as a dealer in clandestine rum; and from Purificación Pérez, a dealer in clandestine rum and drugs. In the other one he was charged with having received a bribe from the aforementioned Pérez.

■ The accused requested a bill of particulars as to the dates on which he had received the bribe in both complaints.

The prosecuting attorney filed an amended complaint eliminating from the first one any reference to Purificación Pérez. Complying with the request for the bill of particulars the prosecuting attorney specified the dates on which the accused received the bribe. According to the specification furnished by the prosecuting attorney, one of the dates in the first complaint, May 31, 1957, is the same date on which, as alleged in the second complaint, he received a bribe from Purificación Pérez. Relying on this and on the fact that Pérez testified that on May 31 the money he gave to the accused was given to him by Díaz Alamo, the defendant maintains that the second complaint should be dismissed. The dismissal did not lie, for Pérez testified that when the accused demanded his share he answered, "Remember that I had given you my five dollars last week." Therefore, Pérez had committed bribery on other occasions. See *People* v. *Méndez*, 67 P.R.R. 777 (1947) (On reconsideration); *People* v. *Serrano*, 66 P.R.R. 431 (1946); *People* v. *Díaz*, 61 P.R.R. 673 (1943).

3. The appellant maintains that the acts of Díaz Alamo, Pérez, and his own, constitute a conspiracy in which the former two are accomplices and as such, the corroboration of their testimonies is required.

■ In *Forastieri* v. *Calzada*, 53 P.R.R. 238 (1938), we decided that since giving and receiving a bribe are separate and distinct offenses, the giver and receiver of a bribe are not accomplices under the rule requiring corroboration of the testimony of an accomplice. *People* v. *Adorno*, 81 P.R.R. 504 (1959); *In re Abella*, 67 P.R.R. 211, 220 (1947). See, also, *People* v. *Seda*, *supra*.

■ 4. The accused maintains, as to the information filed for receiving a bribe from Díaz Alamo, that the trial court should have ordered the acquittal of the accused on the ground that being the aforesaid Díaz Alamo an undercover agent "the accused could have never arrested nor filed a complaint

against him [for the aforesaid agent] was not engaged in the trade of rum or drugs or anything illegal. Likewise, the accused ought not to have anything of Díaz Alamo submitted to his vote, opinion, decision, or determination, in relation to which an alleged bribery would have influenced him, for Díaz Alamo is not a law breaker."

In *People* v. *Seda, supra,* upon rejecting a similar allegation in relation to the *bolita* game, we said: "Upon rejecting this allegation the court stated that although it was true that the intention of the officer was exclusively to obtain evidence rather than to make any wager, this intention—unknown by the defendant—did not prevent the acceptance of the wager by the defendant. It is not necessary that both persons shall have a criminal intention, it being sufficient that the person accepting the bet does so, either expressly or constructively, with said intention."

5. The accused assigns as error the admission of some photographs. The appellant maintains that the trial court committed error in "permitting that the witness Díaz Alamo, explaining the contents [the photographs] said some essential things that do not appear in said photographs." The statements to which appellant refers are the following:

"In the first photograph, this is the photograph while I was arriving at Trinidad Verdejo's house; here I am knocking at the door and nobody answers," T.E. p. 391, 2d part.—"In the second photograph I am looking through a glass in the door, a small piece of glass in the door; I am looking to see whether there is somebody inside; I had knocked and there was no answer."—"In the third one I am sitting in the porch of the house waiting for the arrival of the agent, Trinidad Verdejo," T.E. p. 393, 2d part.—"Trinidad Verdejo is in the next photograph; this is the moment when I took out the wad of bills, the bills I had in my pockets; I am pretending to take one out, a five-dollar bill that I usually took out. In the last photograph, on the eleventh, is when Trinidad Verdejo himself is marking a 'cuadro' in the horse racing program," T.E. p. 395, 2d part.— "These photographs refer to April 19, 1956. That day, like

the previous days, I went to the house, knocked at the door, and nobody answered. In the second photograph the wife of the agent Trinidad Verdejo had just arrived; Trinidad Verdejo is this one with the black cap and dressed in white; this one here is I," T.E. p. 397. "That day she opened the door and went in, in that photograph. After that photograph, in the third photograph, here is when a boy arrived with a box on which, I say, were the letters 'osterizer.' The box arrived, the lady came out to get it; I am here, standing aside; the lady came out to take the box; then the boy gave her a paper for her to sign. I don't know what the paper was about; I know that the box said 'osterizer.' I don't know what was in the box either. This photograph is when the agent, Trinidad Verdejo, arrives; this one here, with a black shirt and the cap; this one standing here is I; the door is open; we greet each other. . . . In this photograph is where I had already given the money to the agent, Trinidad Verdejo, and here. . . . In this photograph I had already given the money to Verdejo; here you can see the hand when he is putting the money into his pocket. . . . A five-dollar bill. The last photograph of this set shows when I had already said good-bye to Trinidad Verdejo, and I am going toward the street to go downstairs, and he is standing here." Pp. 398, 399, 400 and 401.

■ Examining the photographs as well as the statements of Díaz Alamo we do not believe that the same have been injurious to the accused. The above statements are aimed at explaining the photographs. The use of this procedure has been sanctioned beyond question for it helps the trier to understand better the photographic proof offered. 3 Wigmore, Evidence, §§ 792 and 793, 3d ed.

■ 6. When the Prosecuting Attorney introduced in evidence the appointment of the accused as an Internal Revenue Agent, the judge, admitting it, stated:

"It is admitted and marked Exhibit one. At this moment the jury is instructed that this proof has been offered and that you will consider it jointly with the other oral evidence that may be presented and the rest objective evidence that may be presented, if any, *to decide the innocence or guilt of the accused.*" (Italics ours.)

The accused took exception for he understood that the aforesaid statements were injurious to him. He alleges that "the evidence that may be presented is not, as the trial court said, to determine his innocence or guilt. Innocence need not be proved because by constitutional provision in Puerto Rico, the accused is presumed innocent."

The words of the judge presiding the hearing do not have the scope given by the accused. The judge explained that he did so in order that the jury should not become confused. He said that if he had limited himself to telling the jury that the evidence might be presented was for them to decide the guilt of the accused, "the jury could have understood it as the mind of the court about the possible guilt of the accused." The judge also clearly stated that innocence did not have to be proved, and instructed them duly as to the presumption of innocence and as to reasonable doubt.

7. The undercover agent Díaz Alamo when testifying at the trial was asked why he had gone to the house of the accused, and what had induced him to investigate the acts of this agent. He answered that on a certain occasion, the accused being present, he heard when a person said that he was going to inform the agent Pérez Pimentel, who was the person that had attacked the agent Rojas Lugo, and that he would not inform it to Trinidad Verdejo because he "only goes to the Internal Revenue Office in search of money."

The defense objected the admission of those statements because they constituted hearsay evidence.

 The purpose of the statement objected was to establish the reason why undercover agent Díaz Alamo had approached Trinidad Verdejo: to try to find out whether or not what he had heard was true. "Likewise, evidence as to the reason action is taken is admissible, as an exception to the hearsay rule. The truth of the statement of the third person is immaterial; the fact of its being made is the

important consideration." *Commonwealth* v. *Tselepis*, 181 A.2d 710 (Penn. 1962) ; 6 Wigmore, Evidence, § 1766 (1940).

Furthermore, the accused was present when the original statement was made. With respect to him, the statement has lost the character of hearsay evidence. *People* v. *Marrero*, 41 P.R.R. 938 (1931) and *People* v. *Millán*, 35 P.R.R. 817 (1926).

■ 8. The appellant assigns as error the fact that the court did not permit him to establish the grounds to impeach Pérez, the witness for the prosecution. He attempted to do it by establishing that he had been convicted of violation of the Bolita Act, for keeping pandering houses, and other minor crimes. The court only allowed him to do it in relation to the alcoholic beverages and drugs acts. The defense maintains that it had the right to impeach this witness on the basis of all the violations of law (felony or misdemeanors), of all his arrests, and his entire life, because the prosecuting attorney put in issue the entire life of Purificación Pérez upon saying that "he was an habitual breaker of the internal revenue laws."

The Law of Evidence—32 L.P.R.A. § 2150—provides that a witness cannot be impeached "by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

The violations to which the defense referred to did not constitute felony. The trial court did not err since the impeachment sought to be made was not permissible. Nevertheless, the prosecuting attorney in making the statements that appellant quotes to the effect that witness Pérez "was an habitual breaker of the internal revenue laws," helped the accused because it established before the jury that the aforesaid witness was an habitual law breaker. The jury had knowledge of what kind of a person Pérez was.

■ 9. During the trial the defense asked for some reports that had been submitted by Díaz Alamo. Its purpose was to impeach his testimony in the sense that in referring to the accused while he testified he did it differently than when he referred to him in these reports. The prosecuting attorney questioned Díaz Alamo in relation to this, and to that effect he offered the reports in evidence. The defense objected to its admission because those reports contained hearsay evidence injurious to the accused. The court admitted them and instructed the jury that it admitted them "exclusively for the purpose of determining the impeachment of the witness, but that nothing contained in the document could be direct evidence presented against the accused, but exclusively for you to determine whether there has been any contradiction in the testimony of the witness exclusively for the purpose of his impeachment."

The court made clear the purpose of the document.

10. Lastly, the accused maintains that "the fact that the prosecuting attorney commented in his report the silence of the accused constitutes an error, and also he used improper language against him causing prejudice and affecting his right to a fair and just trial; the instructions of the court not being sufficient to wipe out from the minds of the jury the effect that the words of the prosecuting attorney had on them."

■ While rendering his report the prosecuting attorney said the following: "Let the defendant answer, if he can, what reasons has Puro Pérez for being his enemy."

To determine any possible effect of said statement, it should be taken in the light of what had happened in the case. And considered in that light its relation to the statements of the defense in stating its theory in the sense that Pérez was "a strong enemy of the Internal Revenue Agents," is clear.

It is our belief ·that the remark impeached by the defense did not constitute a remark on the silence of the accused. It was just an invitation made by the prosecuting attorney, certain of having proved to the defense the relation between Pérez and the accused, to maintain, in view of the evidence presented, its previous statement in relation to Pérez.[2]

However, even if it were considered, as the trial judge did, that said statement constituted a remark on the silence of the accused, the instruction offered by the judge immediately following is sufficient to cure the possible error. The judge instructed the jury as follows:

"JUDGE RIVERA:

Yes. It seems the silence of the accused is being commented and he should answer why Puro Pérez is his enemy. In such circumstances it gives the impression to the jury that the accused is obliged to take the stand and testify. Those statements should not be made. The elimination of that part is ordered, where the prosecuting attorney informs that the accused should answer that, in relation to his enmity with Purificación Pérez. Ladies and gentlemen of the jury, I ask you to eliminate it from your minds and not take it into consideration. The accused is not obliged to take the stand and testify. If he takes the stand, he should say this or that. But if he does not take the stand, his silence must not be taken into consideration for any purpose in the case. The prosecuting attorney has the obligation to prove his case beyond reasonable doubt, without the accused having

---

[2] That this is so is shown by the following statements of district attorney Rodríguez and district attorney Freyre, respectively:

"I challenge my colleague of the defense to explain to you, in his turn, the reasons he had to say in his theory, such thing.

". . . . . . . .

"What the prosecuting attorney is doing now is rebutting an offer of evidence that he made here. It was going to be proved that Puro Pérez was an enemy of the Internal Revenue Agents. And my colleague asks the defense now to explain where is that element of proof that Purificación Pérez was an enemy of the Internal Revenue Agents."

to testify. That is why he can not be asked to answer." (T.E. p. 329–330, 2d part.) See, also, T.E. p. 383, 2d part.

In *People* v. *Díaz*, 69 P.R.R. 577 (1949), this Court said at pp. 581–583:

"We are of the opinion that the error assigned was cured by the specific instructions promptly given to the jury by the judge of the lower court at the request of the defense; and that with those instructions and also with the ample general instructions of the judge himself as to the defendant's right to abstain from testifying, the prejudice which might have been caused to the defendant by the remarks of the district attorney was removed. [Quotations] In so holding we adopt the rule, considered by us the most correct in principle, and prevailing in the majority of the jurisdictions of the United States, that the error committed by comments made by the district attorney on the silence of the defendant is cured if the trial judge promptly rebukes the prosecuting attorney for his remarks and specifically instructs the jury regarding the right of the defendant to abstain from taking the witness stand."

As to the statement made by the prosecuting attorney in his report, "Damned a thousand times Trinidad Verdejo," when the defense objected that expression the judge instructed the jury:

"JUDGE RIVERA:

Objection sustained. The court understands that that language should not be used with any accused. I ask the prosecuting attorney not to repeat that phrase and the jury to eliminate from their mind the phrase: 'Damned a thousand times Trinidad Verdejo,' understanding that that should not be done to any accused. Eliminate from its mind the phrase of the prosecuting attorney 'damned a thousand times the accused Verdejo.' Go on."

The errors assigned were not committed. The judgment appealed from should be affirmed.