**Mildred Juanita ADAMS**

v.

**UNITED STATES of America.**

No. 15091.

United States Court of Appeals, Fifth Circuit.

March 25, 1955.

Charles W. Tessmer, Dallas, Tex., for appellant.

William O. Braecklein, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

Appellant was convicted on two counts of selling heroin in violation of 21 U.S.C.A. § 174, on evidence which may be summarized as follows: McKinney, a Government informer, drug addict, and confidence man with a record of several convictions, testified that he met appellant about October 1, 1953, at Dallas, Texas, through a mutual friend and fellow addict whom he had met at the Fort Worth U. S. Public Health Hospital. On the occasion of his meeting with appellant, they and several others took some heroin in McKinney's apartment, according to his testimony. He saw her again

on October 15, at her apartment, at which time she said she would try to see her "connection" that evening to obtain heroin. McKinney said he conveyed this information to Federal Narcotics Agent Taylor, who searched him and gave him $50, and watched appellant pick him up in her car. McKinney said she delivered ten capsules to him later that evening in exchange for the $50. The following day McKinney saw her again and gave her some opium; that evening she lent him two capsules of heroin and said she was going back for more heroin the next night. A meeting was arranged between the two. Taylor advanced McKinney $40 after searching him. Appellant picked up McKinney, drove to the same street corner as before, left the car, and returned with eight capsules of heroin, six of which she gave him for the $40. McKinney testified that appellant never took more than $5 a capsule, which he knew to be the standard price in Dallas; that he did not know whether she made a profit; but that she had stated that "the more she buys from this connection the stronger the percentage is."

Narcotics Agents Taylor and Finley testified that they had advanced money to McKinney to buy the heroin, and kept both McKinney and the appellant under surveillance on the occasion of the second transaction. A Government chemist identified the substance in the capsules as containing heroin.

The appellant herself took the stand and testified that she had a record of numerous arrests for vagrancy, one conviction for possession of narcotics, and a conviction of violating the Mann Act, 18 U.S.C.A. § 2421 et seq. She said she met McKinney on September 7, 1953, at her apartment; that he told her he could not get along on opium and asked her to buy some heroin for him; that he said he was broke but had two addict friends who would give him part of the narcotics he obtained if he could arrange for their supply; that she bought heroin for him on October 14 for $70 and more on October 16 for $40. She explained that she purchased the narcotics for McKinney because the doctor's office where he obtained opium was closed and he had no place to buy narcotics in Dallas. She had tried to arrange with her "connection" for McKinney to buy directly, but the connection refused to allow this for fear of detection. McKinney did not want to go over to Fort Worth where he did have a source, and was sick with the addict's withdrawal symptoms; having been sick herself, appellant felt sorry for him and for this reason purchased the narcotics for him at no profit to herself. She also said she lent him two capsules on the 15th. According to her testimony, one could get a discount only on $500 purchases of heroin in Dallas.

We find it unnecessary to consider all of the specifications of error, since we believe that the appellant's motion for acquittal should have been granted. We think that no reasonable jury could fail on this evidence to entertain a reasonable doubt that the appellant *sold* the heroin as alleged. In United States v. Sawyer, 3 Cir., 210 F.2d 169, the evidence as to the part played by the defendant in the transaction was conflicting, but the trial court refused to include in his charge an explanation as to the difference between dealing with a purchaser as seller and acting for him as a procuring agent. The Court held that this was error, and in reversing for a new trial the court said, 210 F.2d 170:

"In these circumstances, we think the court should at least have pointed out to the jury that if they believed that the federal agent asked the defendant to get some heroin for him and thereupon the defendant undertook to act in the prospective purchaser's behalf rather than his own, and in so doing purchased the drug from a third person with whom he was not associated in selling, and thereafter delivered it to the buyer, the defendant would not be a seller and could not be convicted under this indictment. This may be obvious to a lawyer, but we are not sure that in the circumstances of this case the distinction

between a seller and a procuring agent was equally clear to laymen. The government having elected to charge the defendant with the crime of sale rather than illegal possession, the jury should have been alerted to the legal limitations of the sale concept in relation to the circumstances of this case."

We agree with this statement of the applicable legal principle; in the present case, however, there was no materially conflicting evidence. All of the evidence was quite consistent with the appellant's acting only as a purchasing agent or messenger instead of as a seller. There was no evidence from which a sale from her to McKinney could be spelled out beyond a reasonable doubt; nor was there any evidence that she profited in any way from the transactions or was associated with her "connection" in selling narcotics (except for the quite equivocal fact of the two purchases themselves). Therefore, the verdict of guilty of the offense of selling heroin must have been based upon speculation, and the court should have directed a verdict of acquittal.

The judgment is reversed with directions to enter a verdict of acquittal.