369 P.2d 494

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Theodore Samuel PACHECO, Defendant and Appellant.**

**No. 9559.**

Supreme Court of Utah.

March 15, 1962.

Mitsunaga & Ross, Jimi Mitsunaga, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

Defendant appeals, attacking his conviction on counts of grand larceny and second degree burglary on these grounds:

A. That the evidence was insufficient to prove grand larceny;

B. That he was entrapped into the commission of the crime;

C. That prejudicial error was committed in allowing the jury to separate after the case was submitted to them.

The defendant, Theodore Pacheco, together with Johnny Markham and Gerald V. Shelton, were apprehended by police officers in the Payless Builders Supply Company in Salt Lake City at approximately 1:30 a. m. on 12 December, 1960. There is ample evidence, including defendant's own testimony, that their purpose was to take

the money they found therein; $124.67 was missing from the cash box. However, when these men were searched, it is not shown that any money was found on the defendant, but $80.70 was found on Johnny Markham.

A complicating factor in this case is that one of the men involved, Shelton, had notified Officer Gary Parks of the Salt Lake City Police, that a burglary was planned at a certain store in South Salt Lake that night and thus was acting as a police informant.

The three men, Pacheco, Shelton and Markham, went down to the place. They decided not to enter it, but changed plans and went to the Payless Builders Supply. Enroute, they stopped at a gas station at which Shelton left a note on a slip of paper which told the attendant that he was an undercover agent for the police and asked him to call the number thereon and to say: "The Payless Lumber time has been changed." Sparing tortuous detail, this information finally reached Officer Parks, and he, with a companion, arrived at the Payless Builders Supply in time to apprehend the men.

### A. Insufficiency of Evidence

 Defendant bases his contention that the evidence does not sustain the conviction of grand larceny on the proposition that there is no showing that he had possession of any of the money. He argues that since Shelton, on whom the money was found, was acting as an undercover man for the police, his possession of the money could not be imputed to the defendant. This is to be conceded. Inasmuch as Shelton was but a feigned accomplice, having no criminal intent, he was thus not in fact the defendant's accomplice, nor was the defendant his. Therefore, the conduct of Shelton could not be imputed to the defendant in order to make out the offense.[1] But this does not lead to the conclusion advocated by the defendant. Proof of larceny does not require a showing that the accused be in possession of the property stolen. The cases defendant cites on that question deal with the "possession" necessary to be considered as prima facie evidence of larceny under our statute.[2] Such possession is merely evidence of the taking, which is an essential element of the offense.[3]

 On the question of the taking of the money by the defendant, there was the direct testimony of Shelton that:

"A. I took a bunch of envelopes, out of it [the cash box] that Ted [defendant Pacheco] said there was some money in, and Markham took some out.

---

1. See United States v. Buck, 3 U.S.C.M.A. 341, 12 C.M.R. 97.

2. State v. Dyett, 114 Utah 379, 199 P.2d 155; State v. Brooks, 101 Utah 584, 126 P.2d 1044.

3. People v. Gillis, 6 Utah 84, 21 P. 404.

out of it and *Ted took some of it* and I took some of it." (Emphasis added)

Neither the fact that Shelton was not particeps criminis, nor that he was acting as an undercover man for the police, disqualified him as a witness as to what the defendant did, nor rendered his testimony incompetent. It only affected its credibility. If believed by the jury, as it apparently was, it was sufficient evidence to establish that defendant participated in the taking of the money. It is also noteworthy that the evidence as to the sequence of events did not preclude the possibility that the defendant may have taken the money and gotten rid of it before he was searched, nor even that he may have had it on him, because the officer only searched him for weapons.

### B. Entrapment

■ For a peace officer to procure a person to commit a crime, which he otherwise would not have committed, for the purpose of apprehending and prosecuting him is entrapment. This is so discordant to the true function of law enforcement which is the prevention, not the causation, of crime; and so repugnant to fundamental concepts of justice that the conviction of an accused under such circumstances will not be approved.[4] When that issue is present, the question is whether the crime is the product of defendant's own intention and desire, or is the product of some incitement or inducement by the peace officer. If the crime was in fact so instigated or induced by what the officer did that the latter's conduct was the generating cause which produced the crime, and without which it would not have been committed, the defendant should not be convicted. On the other hand, if the defendant's attitude of mind was such that he desired and intended to commit the crime, the mere fact that an officer or someone else afforded him the opportunity to commit it would not constitute entrapment which would be a defense to its commission;[5] and this would not be less true even though an undercover man went along with the defendant in the criminal plan and aided or encouraged him in it.

■ The trial court made this issue plain to the jury by a clear and adequate instruction defining entrapment and explaining that if they believed the evidence concerning it raised a reasonable doubt as to the crime being the result of the defendant's own intention and desire, they should acquit him. Their verdict of guilty found against the defendant's contention. The finding is sufficiently supported by the evidence, which we refer to only in the summary: Shelton testified in substance that the burglary was

4. See Salt Lake City v. Robinson, 40 Utah 448, 125 P. 657.

5. See In re Wright, 68 Nev. 324, 232 P.2d 398.

the defendant's idea; that he had talked about it and planned to commit it; that Shelton only said, "Okay I will go with you"; and that he did not induce or encourage him.

## C. *Separation of the Jury*

■ There is a fallacy underlying the defendant's position which defeats his contention on this point: The record will not justify his assumption that the jury was allowed to separate after the case was submitted to them. This does not occur automatically at the conclusion of the instructions and arguments, as defendant seems to assume, nor until the court affirmatively so indicates and directs the jury to retire and proceed with its deliberations. The only mention of separation in the record is most reasonably interpretable as indicating that the court exercised the discretion given by Sec. 77–31–27, U.C.A.1953:

> "The jurors * * * may, at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate * *."

After the conclusion of the arguments of counsel the court stated to the jury:

> "* * * I am going to excuse you for your noon hour. * * * until 1:30 this afternoon and ask that you return at that time, and that you very carefully keep in mind your conduct, as I have indicated is your duty and at that time I will send you out to deliberate on the issues in this matter."

We have found nothing to suggest that the court transgressed the broad powers it necessarily has in connection with its responsibility of controlling the trial and directing the proceedings in such matter as it deems convenient and necessary to fulfill its purpose.

Having disposed of this contention on the ground stated, we are not concerned with the question whether it would be error for the court to permit the jury to separate after the case was submitted [6] if the necessities in connection with carrying out the trial seem to so require; [7] nor if so, whether it would be prejudicial.[8]

Affirmed.

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

6. Our statutes do not expressly prohibit separation, but defendant argues it is so implied from Secs. 77–31–27 and 32.
7. See State v. Hines et al., 6 Utah 2d 126, 307 P.2d 887, where no error was found in permitting court reporter to escort lady jurors to the restroom.
8. Ibid; and see Sec. 77–42–1, U.C.A.1953 which provides that prejudice shall not be presumed.