UNITED STATES of America,
Appellee,

v.

Herbert WINFIELD, Defendant-
Appellant.

No. 289, Docket 29201.

United States Court of Appeals
Second Circuit.

Argued Jan. 13, 1965.

Decided Feb. 3, 1965.

Glen W. Watkins, Hardy, Peal, Raw-
lings, Werner & Maxwell, New York
City (Anthony F. Marra, The Legal
Aid Society, New York City, on the
brief), for defendant-appellant.

R. Harcourt Dodds, Asst. U. S. Atty.,
New York City (Robert M. Morgenthau,
U. S. Atty., for the Southern District
of New York; John E. Sprizzo, Asst.
U. S. Atty., on the brief), for appellee.

Before SMITH, KAUFMAN and AN-
DERSON, Circuit Judges.

KAUFMAN, Circuit Judge:

This appeal presents a very narrow
issue: whether the defendant, Herbert
Winfield, made a "sale" within the mean-
ing of 26 U.S.C. § 4705(a), which makes
it unlawful "to sell, barter, exchange
or give away narcotic drugs except in
pursuance of a [prescribed] written or-
der." After a trial without a jury,
Winfield was convicted for selling cocaine
to a Federal Bureau of Narcotics Agent,
Charles R. McDonnell, for which he re-
ceived $150. The statutory mandatory
minimum sentence of five years' im-
prisonment was imposed, 26 U.S.C. §
7237(b). Having failed to persuade the
trial judge by his testimony that he had
not sold or delivered any drugs whatever
to the agent, Winfield now claims for the
first time on this appeal that if he did
participate in the transaction, it was as
a procuring agent rather than a seller,
and moreover, that he was entrapped.
We believe, however, that on the record
before us these defenses are of no avail
and therefore affirm.

The experienced trial judge obviously
did not credit Winfield's unequivocal de-
nial of any dealings with the Govern-
ment agent and so a brief summary of
the evidence upon which the conviction
rests will suffice. On the evening of
May 13, 1963, while standing on 116th
Street in Manhattan, an informant in-

troduced Agent McDonnell to the appellant. Without further ado, the informant asked, "Can you do that thing for us?" Winfield replied that he would first have to make a telephone call and advised the agent and informant to meet him in the Hollywood Bar, across the street, in a few minutes. At the appointed rendezvous, McDonnell asked Winfield "what he could get" and was told, "anything you want." The agent said he had $150 and would like "to get" heroin, to which Winfield replied, without hesitation "I can get you three-quarters of an ounce of something good." McDonnell paid in advance, after Winfield handed him a slip of paper noting his telephone number and address.

Within thirty minutes all the participants met close to Winfield's residence and waited vainly in a parked automobile for appellant's "connection" to arrive. Almost five hours later, McDonnell, the informant and appellant parted company, after Winfield agreed to contact the agent when he received the narcotics. In a telephone conversation the next day with McDonnell, Winfield said "his guy * * * had left him the wrong package"—cocaine instead of heroin—which McDonnell agreed, nevertheless, to purchase. He arrived by car at Winfield's residence shortly thereafter, accompanied by the informant. Winfield entered the car which drove off and as they approached 139th Street and St. Nicholas Avenue he gave the agent a tin-foil package containing cocaine, suggesting that he "try it and let me know how you like it."

Careful scrutiny of the totality of facts in each case is required to determine whether a defendant, charged with violating Section 4705(a), acted as a seller or as a procuring agent. Although deliberative examination of the precedents is helpful, we can hardly expect to be provided with all-purpose, ever-applicable standards, for these cases cannot be pigeonholed.

We learn from United States v. Sawyer, 210 F.2d 169 (3 Cir.1954), that the procuring agent-seller distinction is important because there can be no § 4705 (a) violation if the evidence establishes that a federal agent asked the defendant to buy drugs for him and the defendant then purchased them from a third person with whom he was not associated in selling. Sawyer's precise holding was that a conviction must be reversed where a judge, when requested by the defendant to do so, fails to explain to the jury "the difference in fact and in law between dealing with a purchaser as seller and acting for him as a procuring agent." See also Kelley v. United States, 107 U.S.App.D.C. 122, 275 F. 2d 10 (1960). Of course, this holding does not, without more, require reversal where as here the trial was to a judge alone for, as the court acknowledged, the distinction would be "obvious to a lawyer."

It is apparent, nonetheless, that when Sawyer is adapted to this case the relationship between Winfield and the ultimate seller assumes critical significance. But, in considering the evidence and the inferences to be drawn from it, we must as appellate judges view it in a light most favorable to the Government. United States v. Robbins, 340 F.2d 684 (2 Cir. Jan. 12, 1965); United States v. Tutino, 269 F.2d 488, 490 (2 Cir.1959); United States v. Brown, 236 F.2d 403, 405 (2 Cir.1956). With this in mind, we note that here, unlike Adams v. United States, 220 F.2d 297 (5 Cir. 1955), the evidence and the inferences which the trial judge could reasonably draw indicate that Winfield had been previously associated with his connection in selling narcotics. As an illustration, in apologizing for his supplier's delay, the appellant explained that he had never been late before. And when the agent expressed concern about the money paid in advance, Winfield sought to allay his fears by stating that the sum meant nothing to the connection with whom he had been "doing business" for "quite some time." When the total absence of any evidence tending to support the procuring agent theory is contrasted with this proof of prior dealing, we hold that

it was reasonable for the trial judge to infer that Winfield was associated with his supplier in selling narcotics.

It is true that the Government in United States v. Valdes, 229 F.2d 145 (2 Cir. 1956), made a stronger showing of previous association and this Court therefore found it unnecessary to express an opinion on the applicability of the Sawyer-Adams principle. In Valdes, the defendant had been in the narcotics traffic for ten years and apparently had his own supply of heroin. Appellant, nevertheless, takes an overly casuistical view of the law in suggesting that the distinguishing line is whether the Government agent said he wanted to "buy" rather than "get" narcotics.[1]

■ Equally without merit is the entrapment defense, which in this case is inextricably linked with the procuring agent theory and which falls with the evidence of prior dealings between Winfield and his connection. According to the Supreme Court's exegesis in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the defendant is required to show that he was induced by the creative activity of Government officers to commit an offense he would otherwise not have attempted. But "there was here," as Judge Smith noted in another case, "no more than affording an opportunity to one already disposed and willing to commit the crime." United States v. Carter, 320 F.2d 1, 3 (2 Cir.1963). Winfield never expressed reluctance to sell narcotics to the Government agent, cf. Sherman, supra; instead, he assured the agent

that the quality of the drugs was "good" and gave his address and telephone number to facilitate delivery. Indeed, he indicated his proclivity, if not anxiety, to continue selling to McDonnell by asking the agent to "let me know how you like" the cocaine.

The court has been greatly aided by the able efforts of Glen W. Watkins, Esq., appellant's assigned counsel, and wishes to take this opportunity to express its appreciation.

Affirmed.

---

[1]. Henderson v. United States, 261 F.2d 909 (5 Cir. 1959), upon which the appellant relies, is easily distinguishable. There the Government agent "solicited, indeed implored" the defendant's aid and even told her where to buy the drugs. Both Adams and Henderson may be distinguished on the further ground that they involved situations where Government agents resorted to appeals to friendship and sympathy in persuading the defendants to purchase drugs to satisfy the agents' supposed personal cravings. Here, on the other hand, Winfield agreed to furnish McDonnell, a total stranger, with narcotics without hesitation soon after they were introduced. And he delivered the cocaine even though the agent had indicated it was not for personal use but was for "some of my people" who had been "asking for it." This distinction is relevant because a comparison of the defendant's relationships with the buyer and the ultimate seller bears on determining which of the two he was aiding and abetting. Cf. United States v. Moses, 220 F.2d 166, 168 (3 Cir. 1955).