THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FORTUNATO GARCÍA, Defendant and Appellant.

No. CR-64-501.    Decided June 25, 1965.

William Morales Torres for appellant. *J. B. Fernández Badillo,
Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor
General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández,
Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

To pursue the offenders of the *Bolita* Act in a sugar mill
an undercover agent was employed as assistant mechanic.
Appellant was his fellow worker. The agent narrates the
facts which gave rise to the complaint in the following
manner:

". . . About 8:30 a.m., more or less, I was working with
Forto, that is how they call him, then I asked him whether
he had any *Bolita* numbers left and he answered that he had
none; *then I continued to insist and insisted;* I had several pieces
of a ticket of the Lottery of Puerto Rico. *Then, I tried to ex-
change luck with him*; then he sold me a piece of No. 413 for
a quarter, that is, good for one hundred dollars; but instead of
paying him with money I paid with a piece of the Lottery of
Puerto Rico, No. 33177; and that same day the lottery was
drawn." (Italics ours.)

Thus, the situation was that in exchange of a piece of a ticket of the Lottery of Puerto Rico appellant gave the agent his interest in number 413 he had played at the *bolita*. Appellant did not deliver any paper or ticket whatsoever.

After the presentation of the evidence by the prosecuting attorney defendant alleged that it proved that he was induced to commit the offense. Then the judge asked counsel whether he accepted, for the purposes of the defense raised, that defendant sold a ticket. Counsel stated that he accepted it.

Does the defense invoked by appellant lie?

■ The defense of entrapment, originated and elaborated by the North American courts, is one of essential justice. Mikell, *The Doctrine of Entrapment in the Federal Courts*, 90 U. Pa. L. Rev. 245 (1942). It is considered contrary to the fundamental principles of justice which characterize the due process of law that a person be induced and instigated to commit a crime by an agent of the public order and then be held responsible for its commission. As stated in *Sherman* v. *United States*, 356 U.S. 369 (1958): "The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime."

In *People* v. *Verdejo Meléndez*, 88 P.R.R. 202 (1963); *People* v. *Seda*, 82 P.R.R. 695 (1961); *People* v. *Pérez*, 72 P.R.R. 809 (1951) among others, we have considered and discussed the defense of entrapment. In *Verdejo Meléndez* we cited from *State* v. *Pacheco*, 369 P.2d 494 (Utah 1962) that:

". . . If the crime was in fact so instigated or induced by what the officer did that the latter's conduct was the generating cause which produced the crime, and without which it would not have been committed, the defendant should not be convicted. On the other hand, if the defendant's attitude of mind was such that he desired and intended to commit the crime, the mere fact

that an officer or someone else afforded him the opportunity to commit it would not constitute entrapment . . .; and this would not be less true even though an undercover man went along with the defendant in the criminal plan and aided or encouraged him in it."

This theory is in accord with that of the Supreme Court of the United States announced in *Sorrells* v. *United States,* 287 U.S. 435 (1932); *Sherman* v. *United States,* 356 U.S. 369 (1958). In *López* v. *United States,* 373 U.S. 427 (1963) it stated that:

"The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible stratagems involved in the detection and prevention of crime. Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged."

See also: *United States* v. *Winfield,* 341 F.2d 70 (2d Cir. 1965); *United States* v. *Gosser,* 339 F.2d 102 (6th Cir. 1964); *United States* v. *Comi,* 336 F.2d 856 (4th Cir. 1964); *Smith* v. *United States,* 331 F.2d 784 (D.C. Cir. 1964); *United States* v. *People of the State of Illinois,* 329 F.2d 354 (7th Cir. 1964); *State* v. *Dennis,* 204 A.2d 868 (N.J. 1965); Mikell, *The Doctrine of Entrapment in the Federal Courts, supra; The Defense of Entrapment,* 73 Harv. L. Rev. 1333 (1960); Cowen, *The Entrapment Doctrine in the Federal Courts, and Some State Court Comparisons,* 49 J. Crim. L.C. & P.S. 447 (1959); Note, 33 N.Y.U. L. Rev. 1033 (1958); Note, 26 Tenn. L. Rev. 554 (1959); Note, 16 Wash. & Lee L. Rev. 72 (1959); Note, 40 Texas L. Rev. 711 (1962); Note, 15 Ala. L. Rev. 603 (1963). See also footnote 8 in *People* v. *Seda, supra.*

■■ In the case under consideration the evidence established that defendant worked in a sugar mill. It also establishes that he played the game but there is no evidence to prove that he was a sales agent. The undercover agent's testimony was to the effect that he insisted with defendant to interchange luck. He affirms that he insisted with defendant to give him a number of the *bolita* game in exchange for a piece of a ticket of the Lottery of Puerto Rico. The agent delivered the piece but defendant did not deliver any ticket. There is no evidence that defendant had in his possession the ticket, list or any other document of the kind used in the *bolita* game. And he is not accused of that modality of the crime. He is accused of having sold a number.[1]

■ There is nothing in the evidence to establish that defendant, without the insistence of the agent, would have acted as he did. It was not shown that there existed predisposition to commit the act which gave rise to the information. Contrary to the situation present in *Verdejo Meléndez*, here the agent planted the seed. Notwithstanding the fact that the agent worked with him, there is nothing in his testimony to establish that defendant was engaged in selling numbers for the *bolita* game to his fellow workers. The agent insisted, as he himself testified, in exchanging luck and it is from that transaction that the elements to accuse him of

---

[1] In the cases generally prosecuted against the sales agents of numbers of the *bolita* game, the *bolita* agent jots down in his list the number gambled. Usually the undercover agent sees when the number is jotted down and sometimes he receives a receipt of the bet. When he testifies at the trial, he either presents the receipt or states that he saw the agent jotting down the number in his list. But in the present case the police officer does not testify that defendant had jotted the number down. He only avers that defendant told him that he had gambled No. 413 and that by virtue of the exchange agreed upon the undercover agent obtained the "right" to receive the *bolita* prize in the event the number turned out to be the winning number. *Quaere* whether the offense of selling numbers for the *bolita* game may be established on that sole evidence. It is proper to state that defendant could not deny that he had made a *bolita* sale to avail himself of the defense of entrapment. *People* v. *Pérez*, 72 P.R.R. 809 (1951).

selling the numbers for the *bolita* game arise. He was incited to commit the offense which gave rise to the information. In *Verdejo Meléndez*, citing *State* v. *Pacheco, supra*, we stated:

"For a peace officer to procure a person to commit a crime, which he otherwise would not have committed, for the purpose of apprehending and prosecuting him is entrapment. This is so discordant to the true function of law enforcement which is the prevention, not the causation, of crime; and so repugnant to fundamental concepts of justice that the conviction of an accused under such circumstances will not be approved. When that issue is present, the question is whether the crime is the product of defendant's own intention and desire, or is the product of some incitement or inductment by the peace officer."

Certainly, here, the action of defendant was the result of the incitement and inducement of the undercover agent. It is a clear case of entrapment.

The judgment appealed from will be reversed.