**Rudy JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41200.**

Court of Criminal Appeals of Texas.

April 17, 1968.

Rehearing Denied May 29, 1968.

Shirley Butts, San Antonio, for appellant.

Frank Coffey, Dist. Atty., Roland H. Hill, Jr., and William R. Magnussen, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is sale of Heroin; the punishment assessed by the jury, nineteen (19) years confinement in the Texas Department of Corrections.

The evidence reflects that Sam J. Roberts, a white employee of the Federal Food and Drug Administration, worked as an undercover narcotics agent between May and October, 1966, in cooperation with the Ft. Worth City police. Roberts testified that he posed as an unemployed rich boy from Dallas, that his work was mainly among colored people in the south Ft. Worth area. He related that during such time he became acquainted with the appellant; that specifically during the early morning hours of September 28, 1966, he went to the home of Johnny Cornelius, where he had purchased heroin before from Cornelius and Dan Brizzel, and that at such time he discovered that appellant, Edith Cornelius, Johnny Lee "Yank" Reed and Leftin Crenshaw were present; that he inquired if appellant could supply him with a "couple of caps" of heroin and the appellant replied that the price would be $10.00 a cap; that while this was a higher price than normal he gave the appellant $20.00 (furnished by the Ft. Worth Police Department); that appellant then left the room and returned shortly with two capsules. The chain of custody was established, and the State's chemist, Rollin D. Tullos, testified that he had determined from tests that the two capsules contained heroin.

Roberts did acknowledge that prior to this occasion appellant had never offered to sell him narcotics and that he had not made any purchases from him. He admitted that "Yank" Reed, from whom he had made previous purchases but not at this address, was in another room at the time of the alleged sale.

Testifying in his own behalf, appellant, who at the time of the alleged offense was a grade school teacher with a college degree, corroborated Roberts' testimony as to their chance meeting at the Cornelius house. He related he was unaware that Roberts, whom he had known for 2 or 3 months, was engaged in undercover activities; that on the occasion in question Roberts had asked him to buy "3 pills" from "Yank" Reed; that after leaving the room and determining from Reed who was in the bathroom that he could get "3 pills" for $20, he returned to the room and obtained $20.00 from Roberts and secured the "3 pills"; that he completed the transaction because Roberts had promised to buy him "a pill"; that he had kept one of the pills for himself. He further admitted that he knew what was going on at the house; that he knew where narcotics were and where they could be purchased; and that he personally used narcotics.

In rebuttal Roberts testified that "nothing was said about 3 caps" and that as soon as he inquired of appellant about the purchase of two caps of heroin, the appellant asked him for $20.00, left the room and later returned with two capsules of heroin.

In his first ground of error appellant claims the trial court erred in failing to sustain his motion to suppress the testimony of the undercover agent Roberts when the facts at the hearing on such motion showed there was entrapment as a matter of law.

In Sutton v. State, 170 Tex.Cr.R. 617, 343 S.W.2d 452, this Court said:

"It is the general rule that where the criminal intent originates in the mind of an accused, the fact that the officers furnish the opportunity for or aid the accused in the commission of a crime constitutes no defense to such a prosecution. However, if the criminal design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, such is entrapment and, in law, may constitute a defense." 343 S.W.2d 454; See also Clark v. State, Tex.Cr.App., 398 S.W.2d 763; Vela v. State, Tex.Cr.App., 373 S.W.2d 505; Cooper v. State, 162 Tex. Cr.R. 624, 288 S.W.2d 762.

The only witness at such hearing was Roberts whose testimony there was only a brief recital of his later testimony

before the jury with one additional fact. He revealed that after the "sale" in question Crenshaw asked the appellant for some "medicine," and stated he desired to purchase a "paper"[1] from the appellant; that they went into the kitchen and he did not hear the remainder of the conversation. We cannot agree that such evidence showed entrapment as a matter of law or fact. Nor do we find any merit in appellant's contention that at such time the court should have declared Roberts an accomplice witness as a matter of law.

■ It appears to be well established that the factual issue of entrapment is a question for the jury, unless as a matter of law the accused has established beyond a reasonable doubt he was entrapped. See Accardi v. United States (5th Cir.) 257 F.2d 168; Washington v. United States (5th Cir.) 275 F.2d 687; Demos v. United States (5th Cir.) 205 F.2d 596; 17 Baylor Law Review 426, 430. See also Coronado v. United States (5th Cir.) 266 F.2d 719 ("* * * entrapment is a jury question unless evidence is so clear and convincing that the matter can be passed on by the court as a matter of law").

■ In determining if there has been entrapment as a matter of law the Court must consider not only the predisposition of the accused but weigh also the conduct of law enforcement agents, which conduct must not fall below reasonable standards of the proper use of governmental power in law enforcement. See Walker v. United States (5th Cir.) 285 F.2d 52; Accardi v. United States, supra.

"* * * 'To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.' This rationale throws the main emphasis on the 'predisposition' of the accused to commit the crime. We

take it that 'predisposition' means something more than 'disposition' and is intended to refer to the character and intentions of the accused as an 'unwary innocent' (if the conviction is reversed) or as an 'unwary criminal' (if conviction is affirmed)." Accardi v. United States, supra.

Appellant's first ground of error is overruled.

For the same reasons we cannot agree that the trial court erred in overruling appellant's motion for instructed verdict at the close of the testimony on the basis that entrapment as a matter of law had been established. Grounds of error #3 and #5 are overruled.

It is observed that the trial court submitted the issue of entrapment as a defense to the jury as a question of fact, and by their verdict they resolved that issue against the appellant.

■ Considering the question in the light most favorable to the jury verdict, there was ample evidence for the jury to draw the inference of guilt with no entrapment.

In Ground of error #2 appellant complains of the court's failure to charge the jury that Roberts was an accomplice witness and that his testimony had to be corroborated. See Article 38.14, Vernon's Ann.C.C.P.

■ In Alexander v. State, 168 Tex. Cr.R. 288, 325 S.W.2d 139, this Court held that an undercover "agent is not an accomplice witness so long as he does not bring about the crime, but merely obtains evidence to be used against those engaged in the traffic." See also Clark v. State, Tex. Cr.App., 398 S.W.2d 763; Vela v. State, Tex.Cr.App., 373 S.W.2d 505.

---

1. Roberts testified that "A 'paper' during this investigation in the Fort Worth area, referred to either a half a gram or a little over that and under a gram, or more than a 'cap'" of heroin.

However, the question raised is not before us for review since the appellant did not object to the court's charge or request a special charge as to the accomplice nature of Roberts' testimony. See Articles 36.14 and 36.15, V.A.C.C.P. Ground of error #2 is overruled.

In Ground of error #4 appellant complains of the trial court's admission of extraneous offenses or transactions at the guilt or innocence stage of the trial.

At the time appellant was recalled for further cross-examination by the State he was asked if he had ever used narcotics in Roberts' presence. Following his negative reply he was asked by the prosecutor whether or not he had ever used narcotics and he answered "Yes, I have used it." As the prosecutor began his next question appellants' objection to "this line of testimony" was overruled.

Testifying in rebuttal, Roberts related that during his undercover activities he had visited in a number of houses and that he "* * * saw the Defendant 'fixing' himself, and also someone else, in my presence." Thereafter he explained what he meant by "fixing someone" (injecting heroin solution into human veins). The objection to this testimony came only after the questions had been answered and the witness had been passed for cross-examination.

Even if we disregarded the tardiness of the objections and the failure to request the court to instruct the jury to disregard such evidence, this testimony was admissible to rebut the defensive theory that appellant had no intention to sell heroin and had obtained it only because he was induced to do so by Roberts. See Sutton v. State, 170 Tex.Cr.R. 617, 343 S.W.2d 452. Further attention is directed to appellant's testimony on direct examination that he completed the transaction because he was going to get to keep one of the "pills" for himself and "that is why I did it."

In Ground of error #6 appellant insists the court erred in failing to respond to his special requested charge on "accommodation agency" as a defense when such issue was raised by appellant's own testimony.

Appellant cites and relies upon Durham v. State, 162 Tex.Cr.R. 25, 280 S.W.2d 737 wherein this Court said:

"If an accused is in no way interested in behalf of the seller but acts only as an agent of the prosecutor he is not guilty of making a sale."

In Smith v. State, 396 S.W.2d 876, the Durham rule was reaffirmed, this Court saying:

"We think that the New York cases and the Durham case are correct and reject the view that one who acts only as an agent, servant or employee of a law enforcement officer in the purchase of narcotic drugs for evidence purposes, and who is in no way connected or associated with the seller and receives no financial profit from the single sale, can be guilty of selling the narcotic drugs when the law enforcement officer is not."

Where the issue of accommodation agent is raised the court should charge thereon, and where the court refuses to charge thereon, despite a proper objection or special requested charge, error is presented.

We cannot conclude, however, that the court here erred in refusing the requested charge in view of the appellant's own testimony that the real reason he engaged in the transaction was for personal gain—the acquisition of one of the capsules of heroin. Such fact distinguishes this case from Durham and other authorties relied upon by appellant.

In absence of an objection or special requested charge, appellant's last ground of error is not before us for review. He complains that the court charged the jury that the penalty for unlawful sale of

heroin was "for life or any term of time not less than five (5) years" when Article 725b, Sec. 23, Vernon's Ann.P.C. provides such penalty should be "for not less than five years nor more than life." Even if presented, we perceive no error. The court's charge appears more artfully drawn than the statute.

Finding no reversible error, the judgment is affirmed.