496 P.2d 893

**STATE of Utah, Plaintiff and Respondent,**

v.

**Byron SCHULTZ, Defendant and Appellant.**

No. 12751.

Supreme Court of Utah.

May 4, 1972.

Richard W. Campbell, Ogden, for defendant and appellant.

Vernon B. Romney, Atty. Gen., David S. Young, William T. Evans, Asst. Attys.

Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Byron Schultz was convicted by a jury of the crime of selling narcotics, committed in the Ogden Municipal Park the afternoon of May 17, 1971.[1] He contends that he was a victim of entrapment and that the trial court erred in refusing to so rule as a matter of law and dismiss the charge.

Ogden City Police Officer Phillip Roche along with an undercover informant, Gary Spangler, went to the park on the afternoon mentioned purportedly to contact another man, known to be a drug dealer. Spangler approached the defendant and asked him for help in locating someone who would sell him some heroin. Defendant agreed to do so and shortly thereafter located one Terry Ebaugh who had some of the drug. Defendant returned to Spangler and Roche, obtained $20 from the latter, then went and obtained the substance from Ebaugh and in turn delivered it to Roche. On the basis of the State Chemist's analysis, showing that it was 100 milligrams of whitish material, 16.5 per cent morphine and .5 per cent codeine, defendant was arrested and charged.

After the presentation of the State's case, the defendant moved for dismissal on the ground of entrapment. The State moved and was allowed to reopen and present further testimony from Officer Roche that about two weeks before the incident above referred to, the defendant had sold him four white tablets for $8. It is significant that on cross-examination concerning his asserted willingness to help people who appear to be heroin addicts, defendant stated that he did so "occasionally."

Touching upon the defendant's contention of entrapment he testified:

Q. What happened when you were approached? What was said?

A. This Gary Spangler wanted to know where he could purchase some heroin and he looked to me as if he were a heroin addict. So I checked around. I was going to do him a favor. I checked around and found Terry Ebaugh and asked him if Mr. Gary Spangler could purchase some heroin from him. Then I made the transaction with the money, because Ebaugh was kind of afraid.

He described the conversation with Officer Roche:

Q. Now, what was said when you arrived there?

A. Well, Spangler told him that I could get some heroin for him and then Roche gave me the money.

1. In violation of Sec. 58–13a 14(8), U.C.A. 1953.

**394**

Q. How much did he give you?

A. Twenty Dollars.

Q. What did you tell him, if anything?

A. That this Terry Ebaugh had some. He asked me if I could go get it. Then I went and got it for him and brought the heroin back.

■ The defense of entrapment is valid and will preclude conviction of a crime if one who is not intending to commit a crime is persuaded or induced by a police officer to commit an offense which he would not otherwise have committed.[2] Whether there was such entrapment depends upon what the evidence shows as to the facts; and it is to be determined as are other issues of fact. If it is so clear that all reasonable minds must find one way, then the trial court should rule as a matter of law and take the issue from the jury.[3] Conversely, if there is a basis in the evidence upon which reasonable minds could differ, then the determination should be made by the jury.[4]

■ On the basis of the evidence as summarized above, it is our opinion that the trial court correctly viewed the situation disclosed by the evidence as presenting a jury question. Accordingly, in submitting the case to them he properly instructed them that the defendant would not be guilty if the idea to commit the crime did not originate in his own mind but was suggested for the purpose of entrapping him and causing his arrest, but only if he "originally and independently of the officers" intended to commit the offense.[5]

There having been shown no basis for reversal,[6] the jury verdict and judgment is affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent. The main opinion talks only about entrapment. It ignores the question of agency,—one of the major issues on appeal. Schultz asked the court for an instruction as to his relationship with the po-

---

2. Salt Lake City v. Robinson, 40 Utah 448, 125 P. 657; In Re Wright, 68 Nev. 324, 232 P.2d 398.

3. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, but see also Grossman v. State (Alaska), 457 P.2d 226.

4. People v. Alamillo, 113 Cal.App.2d 617, 248 P.2d 421; United States v. Markham, 7 Cir., 191 F.2d 936.

5. State v. Pacheco, 13 Utah 2d 148, 369 P. 2d 494.

6. Our statute Sec. 77-42-1, U.S.C.A.1953, provides that errors which do not affect the essential rights of the parties shall be disregarded; that when defendant has been afforded his entitlement of jury trial, represented by competent counsel, and given the protections the law affords, all presumptions favor the validity of the judgment. See statement in State v. Seymour, 18 Utah 2d 153, 417 P.2d 655.

lice officer and/or with one Ebaugh, the suspected pusher. This request was refused. Under the very facts stated in the decision here, I am of the opinion that the requested instruction would have put to the jury facts which a reasonable person could have believed, and which if he did believe, would demand an acquittal. Therefore,—and obviously,—failure to give such instruction ipso facto would be prejudicial; and had it been given, all the talk in this case about entrapment would be a complete non sequitur. Here is the instruction which was refused, and which, in my opinion, was not cured by any "looking at the instructions as a whole" bit:

> If you believe that the undercover agent asked the defendant to get some narcotic drug for him and thereupon the defendant undertook to act in the prospective purchaser's behalf rather than his own, and in so doing obtained the drug from a third person with whom he was not associated in selling, and thereafter delivered it to the buyer, the defendant would not be a seller and could not be convicted under this charge.

In the trial court's handwritten annotation to this requested instruction, it was asserted,—and erroneously, I think,—that the refusal was based on the court's belief that anyone is a principal in a completed sale, irrespective of whom "he is helping, so long as he is not the buyer himself." This principle, if adopted, would make every undercover agent who makes a planned purchase of heroin for an officer, a seller to the policeman who employed and made him an agent to buy from X, the real seller.

In my opinion the majority decision eliminates innocence or immunity on the part of a paid undercover agent, and makes him particeps to a crime of pushing drugs, where such a result never was intended. In the instant case,—referring to the facts related in the main opinion,— Spangler obviously was the agent of Roche, the police officer,[1] who engineered the purchase. This being so, the officer who furnished the money was the purchaser. He, of course, was immune. So was Spangler, his agent. So was defendant, if the jury were allowed to read and digest the instruction mentioned above, which connotes a possible, probable or absolute agency relationship like Tinker to Evers to Chance,—or Roche to Spangler to Schultz.

If the trial court had given the requested instruction, the entrapment soliloquy would have been moot and judicially persona non grata,—and hence based on an agency thesis rather than a bear-trap principle.

This defendant was sentenced to from five years to life. When one considers the

---

1. Who, three weeks before was euchred out of a confidence game with defendant, who apparently sold him four white tablets for $8, which apparently contained little more than aspirin.

serious consequences that may have been avoided by a very simple, understandable, fair and innocuous instruction, not at all irrelevant in this case, but quite apropos here, the matter of prejudiciality looms large, since a man's liberty for such a long time hangs, without a price tag, in the balance.

There seems to be a division of authority on the "agency" aspect of these cases.[2] The sensible and equitable rule, in my opinion, was expressed in Smith v. State (footnote 2), which particularly fits the facts of the instant case, where the court said:

We think that the New York cases and the Durham case are correct and reject the view that one who acts only as an agent, servant or employee of a law enforcement officer in the purchase of narcotic drugs for evidence purposes, and who is in no way connected or associated with the seller and receives no financial profit from the single sale, can be guilty of selling the narcotic drugs when the law enforcement officer is not. [See United States v. Sawyer, 3 Cir., 210 F.2d 169; United States v. Moses, 3 Cir., 220 F.2d 166.]

I am convinced that the defendant here, under the facts recited in the main opinion, should have a new trial, with appropriate instructions given, having to do with any agency relationship he may have had with the real purchaser and/or the real seller, —with an opportunity for the jury to determine such issue, which might make a world of difference as to defendant's status as purchaser, seller, undercover man, possessor or simply a nutty go-between intending no offense save that of being altruistically stupid.

---

**2.** People v. Shannon, 15 Ill.2d 494, 155 N.E.2d 578 (1959); State v. Weissman, 73 N.J.Super. 274, 179 A.2d 748 (1962). Contra: United States v. Prince, 3d C.C.A., 264 F.2d 850 (1959); Adams v. United States, 5th C.C.A., 220 F.2d 297 (1955); Durham v. State, 1955, 162 Tex. Cr.R. 25, 280 S.W.2d 737; People v. Hingerton, 27 A.D.2d 754, 277 N.Y.S.2d 754 (1967); Smith v. State, Tex.1965; 396 S.W.2d 876.