STATE of Utah, Plaintiff and Respondent,

v.

Earl B. HANSEN, Defendant and Appellant.

No. 15655.

Supreme Court of Utah.

Nov. 27, 1978.

Robert Van Sciver, Edward K. Brass, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, William W. Barrett, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Earl B. Hansen appeals from a jury conviction for attempted theft by receiving stolen property.[1] He argues that the conduct of the policeman who sold him three guns constituted entrapment as a matter of law and, thus, the charge should have been dismissed. Alternatively, he seeks a new trial on the grounds that error was committed in admitting evidence of past offenses in contravention of Section 76–2–303(6), quoted below.

As part of a plan to investigate "fencing" of stolen property occurring in northwest Salt Lake City, city policeman Floyd Ledford, on January 26, 1976, assumed an undercover identity as a city cement inspector at a concrete plant in that area. The defendant was an employee at the plant. Although Officer Ledford was only at the plant for about a week, he and the defendant became acquainted.

At the trial, Officer Ledford testified on direct examination that during the week he was at the cement plant, the defendant told him that he had some stolen CB radios, televisions, and guns which he had been selling and inquired if the officer would be interested in buying any of them. The officer further stated that about a week after he left that assignment, the defendant called him at his home and offered to sell him some guns. Their next contact was on May 6, when Officer Ledford called the defendant at work, told him that there was going to be a burglary of some guns within a few days and asked him if he would be interested in buying some when they were available. After the defendant stated that he would be interested, the officer called him back on May 10, said he had the guns, they met and he sold the defendant three of them.

---

1. Pursuant to 76–6–408, U.C.A.1953.

In fact, there had not been a burglary; rather, Officer Ledford obtained the guns from police headquarters. Within two hours after the sale, the defendant was arrested and the guns were recovered from the trunk of his car; and the defendant was charged with this crime.

■ The issues involved herein require consideration of certain sections of our new criminal code.[2] Section 76–2–303, U.C.A. 1953, subsection (1) defines entrapment:

> Entrapment occurs when a law enforcement officer . . . induces the commission of an offense in order to obtain evidence of the commission for prosecution *by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it.* Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

In regard to the proper interpretation and application of that statute, we are not persuaded by the defendant's argument that the desire and disposition of the defendant to commit crime becomes any less important,[3] nor that the test to be applied is an objective one (focusing on the officer's conduct as it might affect an average person) rather than a subjective test (dealing with the intent and disposition to commit crime of the particular defendant).[4] Though the statutory language is concededly not exactly the same as used in some of our cases, we do not see that it has effected any substantial change in the meaning of our previous rulings in regard to when entrapment occurs.

It is noted that the section just quoted expressly recognizes both concepts: the "methods" employed by the police and whether the crime was committed "by one not otherwise ready to commit it." Whenever there is a genuine issue as to entrapment, the critical question to be determined remains: whether the crime is mainly the product of the defendant's own intent and desire and is thus his voluntary act, or whether it is mainly the product of some incitement or inducement by the police officer.[5]

■ The defendant here contends that the trial court should have ruled as a matter of law that he was entrapped. For him to prevail on that contention, it would have to appear that the only reasonable view of the evidence is that the conduct of the police officer was such a principal motivation as to raise a reasonable doubt that the defendant would have committed the crime.[6] But when there is a reasonable basis in the evidence upon which jurors could believe beyond a reasonable doubt that the crime was a result of the defendant's own voluntary desire and intent to commit the crime, the fact that a police officer merely afforded him the opportunity to commit it, does not amount to entrapment. In view of the lack of certainty as to the conclusion to be drawn from the conflicting evidence in this case, the trial court correctly refused to rule as a matter of law that the defendant was entrapped and submitted that issue to the jury.[7]

The question of more vital concern here is the defendant's contention that the court committed error in allowing Officer Ledford to testify *on direct examination in the State's case in chief* as to matters relating to the defendant's previous transactions, relating to stolen property. In certain cases previously decided by this Court, we have

2. S.L.U., 1973, ch. 196.

3. See *State v. Mullen,* Iowa, 216 N.W.2d 375 (1974). We, on the other hand, have stated that the mental state of the defendant must be examined to ascertain the validity of an entrapment defense. *State v. Casias,* Utah, 567 P.2d 1097 (1977).

4. See *Grossman v. State,* Alaska, 457 P.2d 226 (1969); *People v. Turner,* 390 Mich. 7, 210 N.W.2d 336 (1973).

5. *State v. Pacheco,* 13 Utah 2d 148, 369 P.2d 494 (1962).

6. See *State v. Kasai,* 27 Utah 2d 326, 495 P.2d 1265, 1267 (1972); 22 C.J.S. Criminal Law § 45(2).

7. *State v. Schultz,* 27 Utah 2d 391, 496 P.2d 893 (1972).

indicated that where the defense of entrapment was interposed it was permissible to introduce evidence relating to prior conduct between the defendant and the officer for the purpose of countering that defense.[8]  In regard to that subject, our legislature has enacted Section 76–2–303(6) upon which the defendant relies in support of his attack upon his conviction.  It provides that:

> In any hearing before a judge or jury where the defense of entrapment is in issue, *past offenses of the defendant shall not be admitted except* that in a trial where the defendant testifies he may be asked of his past *convictions for felonies* and any *testimony given by the defendant at a hearing on entrapment* may be used to impeach his testimony at trial.  [All emphasis herein added.]

The reason for such an enactment, and for adjudications to that effect, is that the defendant is entitled to be tried and have his guilt or innocence determined on the basis of the evidence as to the crime charged, without the issue being confused by engendering prejudice against him by testimony concerning prior misdeeds or misconduct (with certain exceptions for justifiable reasons).[9]

■ It is within the prerogative of the legislature to enact rules of evidence;[10] and it is the duty of the courts to give them effect.  If that is to be done in this case, the State should not be permitted to proceed in its case in chief to introduce evidence of past offenses or misconduct of the defendant.  However, that is the extent of the proper application of that statute.  It cannot be invoked to thwart the processes of justice by preventing the presentation of any competent evidence to meet any material issue raised in the case.  The prosecution (i. e., the public it represents) is also entitled to fairness and justice.

It would be manifestly unfair to permit the defendant to raise the issue of entrapment, that is, to say in effect that he had no intention to commit a crime, but was persuaded to do so by the actions of a police officer, then prevent the prosecution from presenting any available evidence to the contrary.  Consequently, when it becomes apparent from the evidence that the defendant is relying upon the defense of entrapment, the carrying out of the fundamental purpose of the trial, that of ascertaining the truth, makes it both logical and necessary that the State be allowed to present any evidence in impeachment or rebuttal which would show the defendant's disposition to commit the crime charged.[11]  This is in accordance with the law as correctly stated in Rule 55, Utah Rules of Evidence;[12] and the fact that this may include prior acts of crime or misconduct would not render such evidence inadmissible.[13]

■ Upon our survey of the record we cannot say with assurance that the result would have been the same if the mandate of the statute had been complied with as discussed herein.  Therefore, we see no justification for concluding that the error was not prejudicial to the defendant.[14]  Consequently, it is necessary that the judgment be reversed and that the cause be remanded

---

8.  *State v. Perkins,* 19 Utah 2d 421, 432 P.2d 50 (1967); *State v. Kasai,* supra note 6.

9.  See footnote 12 below.

10.  That the legislature has the power to prescribe rules of evidence and methods of proof provided that they do not violate constitutional requirements, see 29 Am.Jur.2d, Evidence, Sec. 9, citing numerous supporting cases.

11.  See 61 A.L.R.3d 293.

12.  The rule states that: ".  .  . evidence that a person committed a crime  .  .  . is inadmissible to prove his disposition to commit crime  .  .  . but,  .  .  . such evidence is admissible when relevant to prove some other material fact including  .  .  . motive, opportunity, intent, preparation, plan, knowledge or identity."

13.  See *State v. Dickson,* 12 Utah 2d 8, 361 P.2d 412 (1961), citing 1 Wharton's Criminal Evidence, Secs. 233 et seq. (12th Ed.1955).

14.  See 77–42–1, U.C.A., 1953; *State v. Siebert,* 6 Utah 2d 198, 310 P.2d 388 (1957).

for a new trial,[15] or for such other proceedings as may seem advised, consistent with this decision. No costs awarded.

WILKINS, Justice: (concurring with comments).

I agree with the main opinion reversing the judgment and remanding the case for a new trial based upon error in allowing into evidence testimony relating to prior contacts between defendant and the undercover agent. I also agree with Mr. Justice Crockett's construction of Section 76–2–303(6) Utah Code Annotated, 1953, as amended, in this case. However, I would also reverse the judgment because the objective test for entrapment was not applied in the case. The reasons I feel the objective test should apply have been effectively stated by Mr. Justice Maughan in *State v. Curtis*[1] and *State v. Bridwell.*[2]

MAUGHAN, Justice, concurs in the views expressed in the concurring opinion of Mr. Justice WILKINS.

ELLETT, Chief Justice (dissenting):

The evidence in this case is admissible under Rule 55, Utah Rules of Evidence, which states:

> . . . evidence that a person committed a crime . . . on a specified occasion, is inadmissible to prove his disposition to commit crime . . . *but,* . . . *such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity.* [Emphasis added.]

The rules of evidence are procedural law, not substantive law. It is the Court's sole prerogative to determine what evidence is admissible, and those rules are contained in the Utah Rules of Evidence as adopted by this Court. The legislature has no authority to adopt or amend such procedural rules; and until modified by this Court, Rule 55 will control the admissibility of evidence.

I would affirm the judgment.

HALL, Justice (dissenting):

I do not agree with the interpretation the majority opinion places upon U.C.A., 1953, 76–2–303(6).

The statute in question is not to be viewed as providing a unique rule of evidence applicable *only* where the defense of entrapment is raised. On the contrary, it simply states a widely accepted general principle of the law of evidence, applicable to *all* criminal prosecutions, viz: that evidence of a criminal act, other than relating to a crime charged, is not admissible. Needless to say, there are usually exceptions to every general rule, and such is the case here. The statute itself, in the same sentence, states one exception that permits cross-examination of a defendant as to his prior convictions for felonies.

Further notable exceptions to the general rule have been recognized in both federal and state systems and have been made the subject of specific rules of procedure.[1]

Utah has adopted a rule of evidence[2] which is identical to the uniform rule[3] and which renders evidence of prior crime "admissible when relevant to prove some other fact . . . ." This Court has ruled upon the admissibility of such evidence on numerous occasions and, specifically in an entrapment case, has ruled that evidence of other criminal activity was properly admitted when offered to show the state of mind of the defendant.[4]

---

15. That where error has been committed the defendant is entitled to a new trial, but not to a dismissal of the case, see *State v. Jaramillo,* 25 Utah 2d 328, 481 P.2d 394 (1971).

1. Utah, 542 P.2d 744 (1975).

2. Utah, 566 P.2d 1232 (1977).

1. Rule 55, Uniform Rules of Evidence, 1953, closely patterned after the Federal Rules of Evidence.

2. Rule 55, Utah Rules of Evidence.

3. Supra, footnote 1.

4. *State v. Kasai,* 27 Utah 2d 326, 495 P.2d 1265 (1972).

Evidence of prior crimes and wrongdoings is clearly relevant evidence and the only justification for excluding it is that its relevance is outweighed by its prejudicial effect. Such is not the case here. The trial court properly applied the law in admitting evidence of prior contacts between Officer Ledford and the defendant.

I would affirm.